# Brigham & Co. *v.* Carlisle.

## *Action for Breach of Contract.*

1. *Statute of frauds; when will be considered waived.*—The statute of frauds must be specially pleaded, or it will be considered as waived.

2. *Same; contract not to be performed in one year.*—The statute of frauds, as to contracts not to be performed within one year, applies only to contracts which, by express stipulation, are not to be performed within one year from the making thereof, and does not include a contract which, by its terms, is determinate within that period, but may be continued longer at the option of the parties.

3. *Abandonment of contract on account of breach; waiver of right.* The violation of a contract by one party, or his inability to perform the stipulated acts or services, may authorize the other party to abandon the contract; and the protracted sickness of the plaintiff, probably disabling him from performing the contemplated services, during the appropriate season, might authorize the defendants to abandon it, if they elected to do so; but, when they are shown to have treated the contract as continuing and in force, after the termination of the delay, they will be held to have waived their right to abandon it.

4. *Charge to jury ; when properly refused.*—A party has a right to require an instruction to the jury as to the legal effect of evidence, when, conceding all adverse inferences from the conflicting evidence, the undisputed facts establish a legal conclusion in his favor; but, when a charge asserts a legal proposition, based on certain specified facts, ignoring other facts which there is evidence tending to prove, and which show the incorrectness of the legal conclusion asserted in the charge, it is properly refused.

5. *Payment and set-off; burden of proof.*—When payment and set-off are pleaded, the burden of establishing their truth rests on defendant; and when issue is joined on these pleas, with others, a charge instructing the jury, if they found the evidence to be in equilibrium, on any or all the issues presented, their verdict must be for the defendant, is properly refused.

| 78 | 243 |
| 93 | 620 |
| 78 | 243 |
| 98 | 324 |
| 78 | 243 |
| 99 | 340 |
| 78 | 243 |
| 104 | 436 |
| 78 | 243 |
| 113 | 479 |
| 78 | 243 |
| 127 | 613 |
| 128 | 665 |

'[Brigham & Co. v. Carlisle.]

6. *Damages; what recoverable.*—The primary purpose of awarding damages, whether for the breach of a contract or for a tort (where no question as to punitive damages is involved), is compensation to the party injured; and the primary rules are, that the damages must be the natural and proximate result of the wrong complained of, and they must not be merely speculative, or conjectural.

7. *Same; what not accurate rule as to.*—It is not strictly accurate to say, that all damages are recoverable which are in the contemplation of the parties; since all profits are not recoverable, though in the contemplation of the parties, their allowance depending on their nature and character.

8. *Profits as damages ; when not recoverable in action for breach of contract.*—When profits form an elemental constituent of the contract, their loss the natural result of its breach, and the amount can be estimated with reasonable certainty, such as satisfies the mind of a prudent and impartial person, they are allowable as damages; the requisite to their allowance being some standard, or established *data*, by reference to which the amount can be satisfactorily obtained. But mere speculative profits, such as might be the probable result of an adventure defeated by the breach of a contract, the gains from which are entirely conjectural, and with respect to which no means exist of ascertaining, even proximately, the probable results, can not be recovered.

9. *Damages; what are purely speculative.*—The plaintiff being employed as a travelling salesman for the defendants, to sell goods of different characters and qualities, at a compensation to be determined by a specified commission on the amount of sales of the different kinds of goods, the profits which he might have earned under the contract are purely speculative and conjectural; and his testimony as to the probable amount of sales, not stating any facts, is inadmissible as evidence for him in an action for a breach of the contract.

APPEAL from Lee Circuit Court.

Tried before the Hon. HENRY D. CLAYTON.

The appellee brought this action against J. W. Brigham & Co. to recover damages for the breach of a contract for the sale of goods on commission by him on their account. The case was tried on pleas of the general issue, *non assumpsit*, set-off and payment. There was evidence tending to show that, some time in September, 1881, the plaintiff entered into a contract with Brigham & Co., to sell goods for them as a travelling salesman ; that they were to pay him a commission of five per cent. on the sales of shoes made by him, with the exception of certain brogans, for the sale of which he was to receive two and one half per-cent. He was also to be allowed an account of five hundred dollars, upon which to draw for his travelling expenses. His contract was to last for eight months, and was to begin October 1st, 1881, and could be extended by mutual consent. The plaintiff then testified that he drew one hundred dollars, and went from Boston, where the contract was made, to New York, where he was taken sick, and remained until near the end of November, when he went to his home in the city of Opelika; that soon after this he drew on Brigham & Co. for thirty dollars, which they paid ; and that about the 1st

of January he drew on them again for forty dollars, which they refused to pay. This witness further testified, that Brigham & Co. did not send him the samples they were to furnish, until late in December, and that in February they ordered him to return the samples which they had sent him, up to which time he had made no sales, and done no travelling, for the reason that the spring season had not opened, and, but for the failure of defendants to pay his last draft, he would have commenced to *drum* for them on January 5, 1882. He was then asked, "If you had started early in January, as you contemplated, how many goods could you have reasonably sold, and what would have been your profits on the same, if paid at the rate contracted for with defendants?" To this question the defendants objected, on the ground that it called for illegal and irrelevant evidence, and attempted to lay an improper basis for damages. The court overruled the objection, and allowed the witness to answer the question; and the defendants excepted. The plaintiff then introduced a letter, which he had received from Brigham & Co., of date December 12, 1881, in which he was informed that samples would be shipped him some time during the week, and cautioning him as to the financial standing of certain firms.

The evidence for the defendants tended to show that Carlisle never had any contract with them for a specified time, but that he was merely permitted during their pleasure to sell goods for them, they allowing different commissions on the various kinds of shoes; and that after allowing him all commissions to which he was entitled, his account with them was overdrawn about four hundred dollars, and they withdrew their samples and authority to sell, because plaintiff was selling no goods and continued to draw on them for money not due him.

This was, in substance, all the evidence; and the defendants thereupon requested the court to give the following written charges: (1.) "If the jury believe, from the evidence, that the contract sued upon was made in September, 1881, and the performance of it was to commence on the 1st day of October, 1881, and to continue twelve months, and this contract was not in writing, then it is void, and a recovery can not be had upon it." (2.) "If the jury find the evidence evenly balanced, they must find for the defendant." (3.) "That if they should believe that, by the terms of the contract, Carlisle was to commence work October 1st, 1881, and did not commence until January 1st, 1882, then the defendants were authorized to abandon the contract on their part." The court refused to give each of these charges. and the defendants duly excepted to their refusal.

[Brigham & Co. v. Carlisle.]

The various rulings to which exceptions were reserved, are now assigned as error.

J. M. CHILTON, for appellants.—Plaintiff should not have been permitted to testify as to what the amount or probable amount of his sales ,would have been.—Wood's Mayne on Dam. 83; *Washburn v. Hubbard*, 6 Lans. (N. Y.) 11; *French v. Ramge*, 2 Neb. 254; Sedg. on Meas. Dam. (4th Ed.) 69. The defendant may insist upon the statute of frauds, under the plea of the general issue.—Browne on Stat. Frauds, § 511. The defendants had the right to withdraw from the contract. 60 Ala. 615.

W. H. BARNES, *contra.*   (No brief on file.)

CLOPTON, J.—It may be conceded, that, at common law, a defendant can insist upon the benefit of the statute of frauds, by plea of the general issue.   Under our statute, which provides, that, "in all suits where the defendant relies on a denial of the cause of action as set forth by the plaintiff, he may plead the general issue, and in all other cases, the defendant must briefly plead specially the matter of defense," the statute of frauds must be pleaded, or it will be considered as waived.—*Ritch v. Thornton*, 65 Ala. 309; *Petty v. Dill*, 53 Ala. 641.   No plea of the statute of frauds having been interposed, the validity of the contract, because not in writing, can not be raised by a charge.

If the statute had been pleaded, the contract, as set out in the bill of exceptions, does not come within its inhibition.   It was made in September, 1881, and, as testified by the plaintiff, was to commence on the first of October, and continue at least eight months, and longer if mutually desirable at the end of that time. By its terms, it was capable of performance within a year.   The statute applies to contracts which, by express stipulation, are not to be performed within one year from the making thereof, and not to contracts which by their terms are determinate within that period, but may be continued longer at the option of the parties.—*Heflin v. Milton*, 69 Ala. 354.

The third charge requested by the defendants based their right to abandon the contract on the naked fact, unexplained, that the plaintiff did not commence the performance of the contract until January 1, 1882.   The violation of a contract by one of the parties, or when he is unable to perform the acts or services stipulated, may be sufficient to authorize the other party to abandon it.   Sickness of the plaintiff for a protracted period, such as would probably have disabled him from making sales during the appropriate season, as contemplated

[Brigham & Co. v. Carlisle.]

and intended by the contract, might, perhaps, have authorized the defendants to abandon the contract; but there was no implied condition, that the plaintiff would continue in health. Its abandonment, in such case, is at the election of the defendant; and they will be held to have waived their right to renounce the contract, when, after the delay has terminated, they regard and treat it as continuing and in force.—*Stewart v. Cross*, 66 Ala. 22. The charge requested by the defendants ignored the material facts : the detention of the plaintiff by sickness in New York until near the end of November, the letter of the defendants of December 12th, in reply to one from the plaintiff, in which they stated samples would be furnished him during the week, and cautioning him as to the credit of certain firms, and samples having been actually sent to him late in December; which facts there was evidence tending to prove. Whilst a party has the right to require an instruction as to the legal effect of the evidence, when, conceding all adverse inferences from the conflicting evidence, the undisputed facts establish a legal conclusion in his favor; a charge is properly refused, which asserts a legal proposition, based on certain specified facts, but ignores other facts, which there is evidence tending to prove, showing the incorrectness of the legal conclusion asserted in the charge.

The burden of proof is on the party having the affirmative of the particular issue. Pleas of payment and set-off were filed by defendants, and the *onus* of establishing their truth was on them. The legal effect of the second charge, requested by the defendants, is to instruct the jury, if they found the evidence in *equilibrium* on any or all the issues presented, which included the issues of payment and set-off, to find for the defendants. Being calculated to mislead, it was properly refused.

The material question is the measure of damages. The primary purpose of awarding damages is, actual compensation to the party injured, whether by a tort, or by breach of a contract; though there are exceptional cases, in which exemplary or punitive damages are allowed. Owing to the ever-occurring differences in the circumstances, and in the special conditions of the contracting parties, it has been found difficult, if not impossible, to lay down general and definite rules as to the measure of damages, applicable to all cases of a class. From a misconstruction of expressions of eminent jurists, not sufficiently guarded for general use, but adapted to the case in hand, the applications of rules, commonly recognized, have been as various as the cases. The proposition, that all damages are recoverable which are in the contemplation of the parties, is not strictly correct. The primary rules are, the damages must be the natural and proximate results of the wrong complained of, and

must not be merely speculative, or conjectural. These must concur, though founded on different principles, and are distinct and independent of each other. The law presumes that a party foresees the natural and proximate results of a breach of his contract or tort, and hence these are presumed to be in his legal contemplation. For such damages, as a general rule, the party at fault is liable.

But there are damages, which are in the contemplation of the parties at the time of making the contract, and are the natural and proximate results of its breach, which are not recoverable. The parties must necessarily contemplate the loss of profits as the direct and necessary consequence of the breach of a contract, and yet all profits are not within the scope of recoverable damages. There are numerous cases, however, in which profits constitute, not only an element, but the measure of damage. While the line of demarcation is often dim and shadowy, the distinctive features consist in the nature and character of the profits. When they form an elemental constituent of the contract, their loss the natural result of its breach, and the amount can be estimated with reasonable certainty, such certainty as satisfies the mind of a prudent and impartial person, they are allowed. The requisite to their allowance is some standard, as regular market values, or other established data, by reference to which the amount may be satisfactorily ascertained. Illustrations of profits recoverable are found in cases of sales of personal property at a fixed price, evictions of tenants by landlords, articles of partnership, and many commercial contracts.

On the other hand, " mere speculative profits, such as might be conjectured would be the probable result of an adventure, defeated by the breach of a contract, the gains from which are entirely conjectural, and with respect to which no means exist of ascertaining even approximately the probable results, can not, under any circumstances, be brought within the range of recoverable damages."—1 Suth. on Dam. 141. Profits speculative, conjectural or remote, are not, generally, regarded as an element in estimating the damages. In *Pollock v. Gantt*, 69 Ala. 373, it is said: "What are termed speculative damages— that is possible, or even probable gains, that it is claimed would have been realized, but for the tortious act or breach of contract charged against a defendant—are too remote, and can not be recovered." The same rule has been repeatedly asserted by this court.—*Culver v. Hill*, 68 Ala. 66 ; *Higgins v. Mansfield*, 62 Ala. 267 ; *Burton v. Holley*, 29 Ala. 318 ; *White v. Miller*, 71 N. Y. 118 ; *French v. Ramge*, 2 Neb. 254 ; 2 Smith's Lead. Cases, 574 ; *Olmstead v. Burke*, 25 Ill. 86. The two following cases may serve to illustrate the difference between profits recoverable and not recoverable. In *Ætna Life Ins. Co. v. Nox-*

*son*, 84 Ind. 347, an insurance agent, who had been discharged without cause before the expiration of his contract, was allowed to include in his recovery the probable value of renewals on policies previously obtained by him, upon which future premiums would, in the usual course of business, be received by the company, on the ground, that the amount of compensation, due on such renewals, can be ascertained with requisite certainty by the use of actuary's life-tables and comparisons, and that the basis of the right to damages existed, and was not to be built in the future. In *Lewis v. Atlas Mu. Ins. Co.*, 61 Mo. 534, which is cited with approval in the other case, the same rule as to the probable value of renewals was held, but it was also held, that an estimate of the probable earnings of the agent thereafter, derived from proof of the amount of his collections and commissions before the breach of the contract, in the absence of other proof, is too speculative to be admissible.

Profits are not excluded from recovery, because they are *profits ;* but, when excluded, it is on the ground that there are no *criteria* by which to estimate the amount with the certainty on which the adjudications of courts, and the findings of juries should be based. The amount is not susceptible of proof. In 3 Suth. on Dam. 157, the author discriminatingly observes : " When it is advisedly said, that profits are uncertain and speculative, and can not be recovered, when there is an alleged loss of them, it is not meant that profits are not recoverable merely because they are such, nor because profits are necessarily speculative, contingent, and too uncertain to be proved ; but they are rejected when they are so ; and it is probable that the inquiry for them has been generally proposed when it must end in fruitless uncertainty ; and therefore, it is more a general truth than a general principle, that a loss of profits is no ground on which damages can be given." When not allowed because speculative, contingent and uncertain, their exclusion is founded, by some on the ground of remoteness, and by others, on the presumption that they are not in the legal contemplation of the parties.

The plaintiff, by the contract, undertook the business of travelling salesman for the defendants. The amount of his commissions depended, not merely on the number and amounts of sales he might make, but also on the proportional quantity of the two classes of goods sold, his commissions being different on each. The number and amounts of sales depended on many contingencies—the state of trade, the demand for such goods, their suitableness to the different markets, the fluctuations of business, the skill, energy and industry with which he prosecuted the business, the time employed in effecting different sales, and upon the acceptance of his sales by the de-

[Farris & McCurdy v. Houston.]

fendants.    There are no *criteria*, no established *data*, by reference to which the profits are capable of any estimate.    They are purely speculative and conjectural.    Besides, the evidence is the mere opinion and conjecture of the plaintiff, without giving any facts on which it was based.    The bare statement, uncorroborated by any facts, and without a basis, that "the reasonable sales would have been fifteen thousand dollars, and that the net profits on that amount of sales would have been four hundred and fifty dollars," is too conjectural to be admissible.— *Washburn v. Hubbard*, 10 Lans. 11.

Reversed and remanded.