SARAH J. HODGES, APPELLANT, VS. A. P. FRIES & CO. APPELLEES.

1. In a suit by a tenant against a landlord to recover damages for a failure of the latter to deliver possession of the leased premises according to contract, the measure of damages generally is the difference between the rent agreed upon and the value of the premises to the tenant for the term, and such other damages as

result directly and necessarily as the natural consequence of the breach of the contract, and are capable of being estimated by reliable data.

2. Profits that are speculative or conjectural are not generally regarded as elements in fixing damages, not because there is anything in their nature *per se* which demands their rejection, but because they can not be estimated with reasonable certainty.

3. On appeal the findings of a referee on the evidence will be accorded the same consideration and weight as are given to the verdict of a jury, and where there is sufficient testimony to sustain the findings, it will not be set aside unless the testimony against them is so strong as to indicate that due consideration had not been given to the entire testimony.

4. If a plaintiff by reasonable exertions or care could have prevented damages resulting to him by reason of the wronful act, or acts, of the defendant, he should have used such exertions and care to avoid the damage, and, so far as he could, thus have prevented them, he can not recover therefor.

Appeal from the Circuit Court for Duval county.

### STATEMENT.

Mrs. Hodges, the appellant, sued A. P. Fries and J. W. Morrison, as partners doing business under the firm name of A. P. Fries & Co., for damages for the breach of an alleged rental contract. The declaration filed in the case contains two counts: The first one alleges, in substance, that appellees on the 27th day of February, 1889, contracted to rent to appellant one-half of a store, numbered 41 E. Bay street, in the city of Jacksonville, to be used and occupied by her for one year from the 15th day of March, 1889, for the sum of thirty-five dollars per month, and that appellant on said date demanded possession of the half of said store, and possession of the same was postponed

by appellees on the pretext that the said store was being repaired and fitted up for her use, and as soon as said repairs were finished, which would be at an early day, possession of the half of said store would be delivered to her; that appellant was delayed from time to time until the 15th day of April following when she was refused possession of the half of said store by appellees, who then informed her that they had rented the entire store to other parties. The damages sued for are $5,000, and the alleged causes of the same are as follows, *viz:* That appellant broke up and abandoned a lucrative millinery business in which she was engaged in Lake City, Florida, and moved a large and valuable stock of millinery goods to Jacksonville, and also moved herself with her large and dependent family of children to the latter place on the faith of said contract, and relying upon the promise of appellees to give her possession of the half of said store on the 15th day of March, 1887, when and where she could resume her business, she having good prospects of a compensatory spring trade, out of which she had every reason to have expected to make a large sum of money, to-wit: $5,000, all of which profits and gain she lost in consequence of the failure of appellees to let appellant have the half of said store; and appellant incurred further loss and damage in consequence of the violation of said contract, in the unnecessary expense in breaking up her busines in Lake City and having to support her family in Jacksonville without being able to engage in business between the 15th of March, 1889, and the 15th day of April following, she being led to believe from assurances from appellees that she would soon get possession of the half of said store, whereas she had not been able to resume

her said business up to the time of bringing her suit. The second count alleges that subsequent to the making of the contract for the half of said store appellees offered to rent to appellant the entire store for fifty dollars per month for one year, and she was given the option of taking the entire store at any time before the repairs then being made on it were completed; that before said repairs were completed, to-wit, on the first day of April, 1889, appellant decided to take the entire store on the terms mentioned, and so informed appellees, who then and there refused to let her have said store in whole or in part, and then informed her that they had rented the entire store to other parties. By reason of the failure to obtain the possession of said store it is alleged that appellant was damaged in the sum of $5,000, for the reasons and on the grounds set forth in the first count of the declaration.

A demurrer to so much of the specifications of damages in the declaration as are based upon the claim for loss of profits was sustained, and appellees filed two pleas, one denying the making of the contract for the rent of either the half or the whole of the said store as alleged, and the other alleging that appellant, after entering into negotiations for the rent of the whole or half of the said store, declined and refused to take a lease of either. The declaration was subsequently amended by repeating in substance the allegations of the original as to the contract for the rent of the said store-room, and the refusal of appellees to comply with their said contract, and alleging damages as follows, viz: That appellant incurred great expense and outlay of money in moving herself and family, consisting of several young, dependent children, from Lake City, Florida, where they had resided for many years, to Jacksonville; the cost and expense of sup-

porting appellant and her children during the time she was waiting to get possession of the half of said store, amounting to the sum of $500; the cost and outlay of money in freight on the shipment of a large stock of millinery goods, of value the sum of $5,000, from Lake City to Jacksonville, and in money paid for drayage, packing and storing said goods, as well as loss of goods and other legitimate expenses and losses in and about the removal of said stock of goods, and in and about the keeping of the same preparatory to appellant's going into said store. It is further alleged that appellees well knew when they entered into said contract that appellant was engaged in the millinery business in Lake City, and by said contract they induced her to break up and abandon said business in Lake City, which it is alleged was luciative and paying and move her said business and stock of goods to Jacksonville, by promising to rent to her one half of said store, and to deliver possession of the same at the time mentioned for the purpose of resuming her said business in Jacksonville. It is also alleged that appellant was not able to procure another store equally favorable to her business after appellees refused to give her possession of the one she had rented, or during the time she was waiting to get possession of the same.

The bill of particulars filed with the amended declaration consists of moving appellant and family from Lake City to Jacksonville, and for support of family while waiting to get possession of store, . . . . . .    $ 500
Cost of moving stock of goods, freight, drayage, loss of goods, including storage . . . . . . .    1,000
Interest on value of goods . . . . . . . . . . . . . . . .    500

On the isues presented by the pleas mentioned, the case was tried before a referee who rendered judgment

in favor of appellant for $5.50 and costs, from which she has appealed.

The other facts in the case are stated in the opinion of the court.

*Cooper & Cooper* for Appellant.

*H. Bisbee* for Appellee.

MABRY, J.:

The first error assigned and presented here in behalf of appellant is that the court erred in sustaining the demurrer to that part of the declaration claiming damages for loss of supposed profits from trade. Counsel for appellant say that "the declaration and the plaintiff's joinder in demurrer show that the damages claimed for loss of alleged profits in trade were based on the legal proposition, that where a store is rented for the purpose of trade, and in which to resume a business already under way, which necessarily enters into the contemplation of the parties, such loss of trade forms a ground of damages if proven; the basis of proof being what she had annually realized net before the breaking up" (of the business).

We can only look to the declaration in determining its sufficiency on demurrer, and what is stated in the joinder in demurrer to the declaration can not affect its allegations on such issue. From the original declaration we understand that appellant claimed as recoverable damages profits that she had good reasons to expect from a millinery business prevented or postponed without cause by the refusal of appellees to let her have the half of the store-room mentioned. The contract for the rent of the store, and which it is al-

leged that appellees violated, was executory, and, according to the allegations of the declaration, their action in the premises was without excuse. No money was paid on the lease contracted for, but a price was fixed, and possession was refused without cause. Under such circumstances the tenant would without doubt be entitled to recover the difference in value between the price agreed on and the rental value of the room at the time of the breach of the contract. The original declaration claims more than that as damages. The feature of it demurred to asserts that the profits which the tenant had good reason to expect from the business to be carried on in the premises refused are recoverable as damages. Considering the declaration in this light, as it has been presented, we will pass upon the correctness of the court's ruling thereon.

The primary object in awarding damages at common law is compensation to the injured party, and the damages allowed for this purpose must be the natural and proximate result of the wrong done. In cases of breach of contract, with few exceptions, the common law rule aims to give compensation for the loss sustained, and to put the injured party in the same condition in which he would have been had the contract been performed. As between vendor and vendee, when the former fails to perform his contract of sale and conveyance of real estate by reason of his inability without fault to make title, an exception to the general rule as to awarding damages was early established. Flureau vs. Thornhill, 2 W., Blackstone, 1078. It was there established that in such cases the vendee could recover only the amount of payments made, with interest and costs. The rule established by the case referred to has been extensively followed in this country, though some courts, it seems, have departed

from it. Efforts have been made to have the same rule applied to the violation of rental contracts between landlord and tenant on the theory that the latter is a purchaser *pro tanto* of an interest in real estate. The rule established in Thureau vs. Thornhill has not met with general favor, and the courts that have followed it have shown no disposition to extend it beyond the facts of that case. In England this rule has not been applied as between landlord and tenant where the former in violation of his contract has withheld possession of the leased premises from the latter, and the general rule that the measure of damages is the loss a plaintiff has proximately sustained by reason of the breach of the defendant's contract, obtains in such cases. Lock vs. Furze, 19 C. B. N. S. 96; same case on appeal, L. R. 1 C. P. Cases, 441. In these cases it is said that the plaintiff was entitled to recover the value of the leased premises for the term, and also the expenses to which he has legitimately been put in endeavoring to obtain it.

In New York and Missouri it has been held that when damages are claimed solely from the failure of the lessor to give the lessee possession of the leased premises the plaintiff can only recover the difference in the rent as provided for in the contract of lease and the rental value of the premises. Dodds vs. Hakes, 114, N. Y., 260; Hughes vs. Hood, 50 Mo., 350.

Our view is that the general rule for awarding damages should apply in such cases, and the plaintiff should generally be allowed to recover the difference between the rent reserved and the value of the use of the premises for the term. If other damages result as the direct and necessary or natural consequence of the breach of the contract by the defendant, we do not see

why they can not also be recovered, provided they are capable of being estimated by reliable data. Ward vs. Smith, 11 Price, 19; Brigham vs. Carlisle, 78 Ala., 243; S. C. 56 Am. Rep., 28; Snodgrass vs. Reynolds, 79 Ala.. 452, S. C. 58 Am. Rep., 601; Adair vs. Bogle, 20 Iowa, 238; Woodbury vs. Jones, 44 N. H., 206.

In estimating damages, profits that are speculative or conjectural are not generally regarded as elements in fixing damages. Such profits are rejected not because there is anything in their nature *per se* which demands their rejection, but in obedience to the well-established common law rule that all damages recovered for a breach of contract must be proven with certainty, and not left to speculation or conjecture. The rule on the subject is well expressed, we think, in the case of Brigham vs. Carlisle, *supra*, as follows, *viz:* "The law presumes that a party foresees the natural and proximate result of a breach of his contract or tort, and hence these are presumed to be in his legal contemplation. For such damages, as a general rule, the party at fault is liable. But there are damages which are in the contemplation of the parties at the time of making the contract and are the natural and proximate results of its breach, which are not recoverable. The parties must necessarily contemplate the loss of profits as the direct and necessary consequence of the breach of a contract, and yet all profits are not within the scope of recoverable damages. There are numerous cases, however, in which profits constitute, not only an element, but the measure of damages. While the line of demarcation is often dim and shadowy, the distinctive features consist in the nature and character of the profits. When they form an elemental constituent of the contract, their loss the

natural result of its breach, and the amount can be estimated with reasonable certainty, such certainty as satisfies the mind of a prudent and impartial person, they are allowed. The requisite to their allowance is some standard, as regular market values, or other established data, by reference to which the amount may be satisfactorily ascertained. * * On the other hand, mere speculative profits, such as might be conjectured, would be the probable result of an adventure, defeated by the breach of a contract, the gains from which are entirely conjectural, and with respect to which no means exist of ascertaining even approximately the probable results, can not under any circumstances be brought within the range of recoverable damages." Masterton vs. Mayer & Co., 7 Hill, 61, S. C., 42 Am. Dec., 38.

It may be that profits, though not recoverable as such, should be allowed to be proven in some cases as affording facts from which a jury may properly estimate the value of the lease to the tenant, but they should not be allowed for this purpose unless they form a constituent element of the contract and the amount can be estimated with reasonable certainty from established data. The cases of Brent Bros. vs. Parker, 23 Fla., 200, 1 South. Rep., 780, and Sullivan vs. McMillan, 26 Fla., 543, 8 South. Rep., 450, are authority for the admission of evidence as to the loss of profits in a suit for a breach of contract where they are susceptible of estimation by satisfactory proof.

Under the allegations of the declaration before us the profits and gains supposed to have been sustained by reason of the failure to commence the millinery business in the store contracted for in Jacksonville are

too remote and conjectural to form an element of recoverable damages for a breach of the alleged contract. They are not susceptible of any satisfactory estimation by established data, as plaintiff had never engaged in such business at that place. The cases of Giles vs. O'Toole, 4 Barbour, 261, and Green vs. Williams, 45 Ill., 206, in both of which damages were claimed for profits which might have been made in the millinery business in the premises withheld, decide that they could not be recovered because they were too remote and speculative. 1 Sedgwick on Damages, 183.

The other assignments of error relate to the findings of fact by the referee and his conclusions as to the law applicable to the facts. The referee found from the evidence that appellant and appellees entered into a contract whereby one-half of the store mentioned in the declaration was to be occupied by the former for one year, and that possession was to be given to her as soon as the repairs then being placed on the store were completed; that said contract was entered into after appellant moved with her goods to Jacksonville, but before the removal of the goods to rooms of appellees; that the store was ready for occupancy about the first of April, 1889, and appellant stood ready to accept the store under the contract, but appellees refused to let her have possession; that at the time of said refusal appellees offered to rent to appellant another store in the same locality, practically as good for the purposes of her business as the store contracted for and for the same rental price, and that she, without legal excuse, refused to accept it; and that the rental value of the store-room contracted for as it was when the contract was made and when possession was refused was fifty dollars per month by the year, the contract price, and that there was no difference between

the actual rental value of half of the store and what appellant agreed to pay for it.    The referee also found that appellant expended five dollars and fifty cents in the removal of her goods from the depot in Jacksonville to rooms of appellees, and that this item was the only damages legally recoverable for the breach of the said contract.

The conclusions of the referee on the facts must, in our judgment, be sustained.   On appeal the findings of a referee on the testimony are to be accorded the same consideration and weight as are given to the verdict of a jury.   McClenny vs. Hubbard, 20 Fla., 541; Broward vs. Roche, 21 Fla., 465.   That is, where there is sufficient testimony to sustain the finding it will not be set aside on appeal unless the testimony against it is so strong as to indicate that due consideration had not been given to the entire testimony.

From a careful consideration of the correspondence between the parties before appellant moved to Jacksonville, we reach the conclusion that it can not be said that there was by said correspondence any completed bargain as to the rent of either the half or the whole of the store-room in question.   That there was an agreement about the 15th of March, 1889, after appellant moved to Jacksonville, for her to have one-half of the store-room described in the declaration, when the repairs then being placed on it were completed, is supported by direct and positive testimony, and under the rule announced we are not authorized to disturb it. Upon such finding it was proper for the referee to exclude all costs and expenses incident to the move to Jacksonville and incurred before the contract was made.   Whether such costs and expenses would be allowable as damages for a breach of the contract had it been entered into before appellant moved from Lake

City, and before such costs and expenses were incurred, we need not say. As such expenditures had already been made when the contract was entered into, they did not of course enter into the contemplation of the parties in making the contract.

Appellant and one of the appellees, J. W. Morrison, were the only witnesses who testified as to the value and desirability of the store offered in lieu of the one she was to have, being the one described in the declaration. Morrison testified that the store offered Mrs. Hodges was as good in every respect as the one she wanted, and says, using his language, that "as far as desirability is concerned, I should think that the Simkin store (the one offered) was a more desirable store than number 41 East Bay, as it is the same size, has a plate-glass front, and is one door nearer the business center of the city." Mrs. Hodges denies that the Simkin store was as desirable for her business as the one she was to have, but she does not deny that the two stores were in the same locality, adjoining or near each other, and of the same structure and size. No difference in pecuniary value is shown. It is clear that she was offered the Simkin store, then owned by appellees, on the same terms as the other store, and on the testimony we do not feel authorized to disturb the finding of the referee that the Simkin store was practically as good for the business contemplated as the other one. This conclusion justified the exclusion by the referee of any consideration of the amounts expended by the appellant in securing other rooms in different portions of Jacksonville in which to carry on her business after she refused to accept the Simkin store. It is a well-established legal rule, and of constant application, that if a plaintiff by reasonable exertions or care could have prevented dam-

ages resulting to him by reason of the defendant's wrongful acts, it was his duty to do so, and so far as he could have thus prevented them, he can not recover therefor. Adair vs. Bogle, *supra;* Dobbins vs. Duquid, 65 Ill., 464. If appellant was tendered on equal terms as good a store-room as the one she had contracted for, and in the same locality, she had a right to decline it, but she had no right to claim as damages the increased rental cost of other rooms secured in different parts of the city and the expenses attending the removal to the same.

Under the facts found by the referee there was no basis for the claim of supposed profits that might have been realized from a millinery business in the store contracted for. Appellant expected to commence such a business in the store, and this fact was evidently known to appellees. As found by the referee, however, the business was to be opened when the store was repaired, and at that time she was tendered another room in the same locality equally as good as the one she was to go into. Furthermore such profits were entirely speculative and there was no reasonably safe basis for their estimation. Appellant had never before, so far as we know, engaged in business in Jacksonville, and her business venture was entirely a new one in that place. For reasons given in the first part of this opinion such profits could not be estimated and considered.

Accepting the conclusions of the referee on the testimony as correct, which we must do, it follows that appellant sustained no substantial damage by reason of the failure of appellees to deliver to her possession of the store described in the declaration, and that she has shown none by her testimony for which she is en-

titled to a recovery beyond that awarded by the referee.

We may add that the question of the effect of the statute of frauds would present a serious difficulty to the right of appellant to recover on the contract alleged in this case but it is not insisted on, and it is not necessary to consider it.

The judgment, upon the record before us, should be affirmed, and it will be so ordered.