CARROLL, CITAS., Judge.
An action at law for breach of contract, filed by the appellee Tommy Cohen against the appellant Michael Lanzalotti and another in the circuit court in Dade County, resulted in a summary judgment for the plaintiff on liability, and trial on the issues relating to damages with a verdict and judgment for $100,000 in favor of Cohen. The defendant Lanzalotti has appealed.
Lanzalotti and his wife, as lessees, in February of 1950 entered into a 99-year lease on an undeveloped parcel of property in Miami Shores, with the owners thereof, Vida K. Ferary and her husband Ernest *729 C. Ferary. That lease made no provision for subordinating the fee to any mortgage which the lessees might give on improving the property.
On November 16, 1956, the lessee Lanzalotti entered into a written contract designated “Deposit Receipt and Lease Offer” with one H. W. Henderson, by which he agreed to sublease the property to “H. W. Henderson or nominee” on certain terms including an annual rental of $20,000. The contract called for the sublease to be effective and closed on February 15, 1957. One Thousand ($1,000) Dollars was paid down at the time of the contract, and $10,000 more was to be paid at the time of closing. Lanzalotti agreed to furnish an abstract of title to the property, and further agreed “that owner of the fee will subordinate to institutional financing.”
On December 22, 1956, Henderson assigned his interest in the contract for the sublease to the plaintiff Tommy Cohen, for “$10.00 and other good and valuable considerations.” The complaint filed by Cohen alleged the making of the 99-year lease, but did not attach the lease or show the provisions thereof; it alleged the contract for sublease from Lanzalotti to Henderson under which Henderson put up $1,000, and an assignment of that contract to Cohen. The complaint then set out the following allegation of default:
“That notwithstanding said Agreement provides that said sublease shall commence on February 15, 1957, the defendant, Michael Lanzalotti, has at no time delivered to the plaintiff an abstract of title to said above described property as provided for by said Agreement, nor has he executed or offered to execute said sub-lease, nor has he procured or caused to be procured the aforementioned subordination of the interest of the fee owner of said lands.
“That the plaintiff has at all times been ready, willing and able to do and perform all matters and things required to be performed on his part by virtue of said Agreement, but that the defendant, Michael Lanzalotti, has refused and still refuses to perform all matters and things required by virtue of said Agreement, by reason whereof the said Michael Lanzalotti has wholly breached said Agreement.”
As a basis for damages, which were claimed “in excess of Five Thousand ($5,000) Dollars” the complaint alleged:
“That the plaintiff, in reliance upon the representations and agreements of the defendants and of the covenants contained in said Agreement, has expended great sums in the preparation of plans for the development of said lands as well as for the securing of the necessary financing therefor, and has further been deprived of the profit for the sale thereof.”
An answer was filed on behalf of Lanza-lotti in which he admitted entering into the contract with Henderson for the sublease, but denied that he had agreed to obtain subordination of the fee to an “institutional financing” mortgage, and denied he was obligated to do so. On motion of the plaintiff the court struck Lanzalotti’s denial that he had contracted for or obligated himself with respect to the subordination.
In a counterclaim, filed with the answer, Lanzalotti alleged that in his negotiations with Henderson prior to entering into the written contract of November 16, 1956 for a sublease, the parties understood that he (Lanzalotti) “would endeavor to obtain consent of the owner of the fee of said property to subordinate to institutional financing with the further understanding and agreement that the said Henderson or his assignee would invest from his own funds Two Hundred Thousand Dollars ($200,000.00), and thereby develop a substantial equity in the improvement to be constructed upon said real property in order to induce the owner of the fee herein to subordinate to institutional financing, said inducement being necessary since the parent lease prohibited subordination, and the said *730 Henderson had knowledge and understood that the parent lease, between the owner of the fee and the counterclaimant, provided, among other things, that the owner of the fee would not subordinate to institutional financing and it was the understanding and agreement between the counterclaim-ant and said Henderson that subordination could be obtained only, if at all, after the said Henderson established an equity in the said improvement as hereinbefore alleged.
“The said Henderson, nor the counter-defendant, nor any other assignee of the said Henderson or the counter-defendant have ever agreed or offered to invest from their own funds an amount as alleged in paragraph (b) above to establish a substantial equity in said improvement as agreed to induce the owner of the fee to subordinate to institutional financing and that counter-defendant, assignee of Henderson, has and continued to refuse to do so and therefore has breached the said agreement with counter-claimant.”
The counterclaim then claimed as a basis for damages that Lanzalotti had “been required to expend great sums of money in maintaining this -property.”
On motions filed by the plaintiff Cohen, the court dismissed the counterclaim of the defendant Lanzalotti, and on the main case granted summary judgment in favor of the plaintiff as to liability. The cause proceeded to trial on the question of damages with the result stated.
Based on numerous assignments of error the appellant has raised three points. The first two points, dealing with liability, are without merit, and without any extended discussion we affirm the granting of summary judgment in favor of the plaintiff on liability, and the striking of the counterclaim. The answer contained no defense to the contract obligations which were declared upon, and quite clearly there were no genuine issues raised as to liability. The trial judge properly rejected the counterclaim as being an effort to vary the terms of the written contract of November 16, in violation of the parol evidence rule, and in holding that the alleged promise of Henderson to expend money on the premises was not a condition precedent to the written contract of Lanzalotti to provide subordination so as to avoid the parol evidence rule, but was a collateral agreement that could only be advanced if included in the integrated contract.
The third point, relating to damages, was stated by the appellant as follows :
“Whether the court erred in allowing plaintiff to prove and recover, as an element of damage, profit lost from a subsequent collateral undertaking.”
Appellant argues that it was error for the court, over his objection, to allow as a basis for damages evidence that Cohen entered into negotiations with one Shapro (which never ripened into a contract) for a sale to Shapro of a motel which Cohen intended to build on the premises upon which Cohen held a contract for sublease. The substance of that evidence was that Shapro-had offered to purchase such a motel if it was built, at a figure which was $197,836.70' higher than Cohen’s estimate of what such a motel would cost him.
By appropriate assignments of error objections were preserved to certain charges-requested by the plaintiff which were given by the court relating to this feature, being plaintiff’s requested charge No. 3,[1] and plaintiff’s requested charge No. 8.[2]
*731 This case presents the situation of a man holding a contract, under which $1,000 had been put up with the owner of a 99-year lease, which called for a sublease of the lessee’s interest for the balance of the term, and which included a provision that the original lessee (sublessor) would furnish or arrange subordination of the fee by the owner for the benefit of an institutional mortgage incident to construction on the property. The deal was not closed because the holder of the 99-year lease, Lanzalotti, was unable to produce the subordination. The evidence as to loss of profits, which under the plaintiff’s requested charges Nos. 3 and 8 the jury was entitled to consider and utilize in determining damages, was not even of an offer, because at that time there was nothing to be sold. No building had been commenced, and the party who was to build it had not yet obtained his sublease. No contract was made between Cohen and the prospective purchaser of the motel, and certainly Cohen was under no obligation to build' it for Shapro.
The measure of damages recoverable against a lessor for breach of contract to make a lease, or against a sublessor for breach of contract to make a sublease, is the difference between the rental value of the property for the term and the agreed rent. If the value of a sublease, as and in the form contracted for, is greater than the amount the sublessee would be required to pay therefor and thereunder, the difference is recoverable. Moses v. Autuono, 56 Fla. 499, 47 So. 925, 20 L.R.A..N.S., 350; Young v. Cobbs, Fla. 1959, 110 So.2d 651; 5 Williston, Contracts, § 1405 (rev. ed. 1937); 32 Am.Jur., Landlord & Tenant, § 32; 51 C.J.S. Landlord and Tenant § 199. Recovery may include special damages which are reasonably and necessarily incurred as a proximate result of the failure of the lessor or sublessor to perform his contract to make a lease or sublease, and such as should reasonably have been contemplated by the parties. Moses v. Autuono, supra; Twyman v. Roell, 123 Fla. 2, 166 So. 215. Loss of profits, in appropriate circumstances, may be included among such elements of special damages, but not as to profits which are wholly in prospect and contemplation, such as claimed profits founded upon talk of sale of a non-existent building. Such evidence, offered as a basis for claiming lost profits, was too uncertain and speculative upon which to ground damages. See Hodges v Fries, 34 Fla. 63, 15 So. 682; Rogers v. Standard Oil Co., 130 Fla. 674, 178 So. 427; Young v. Cobbs, Fla.1955, 83 So.2d 417; 15 Am.Jur., Damages, § 150; 9 Fla.Jur., Damages, §§ 79-81; Annotation, 104 A.L.R. 132.
The verdict is permeated with the stain which resulted when the jury was allowed to include in their consideration, as evidence of loss of profits, the unconcluded negotiations between Cohen and Shapro regarding the sale of a motel if one should be built by Cohen. The other elements of special damage which may have been reflected in the verdict and judgment were not con *732 sidered or ruled on here, as they were not challenged on this appeal.
Accordingly, the judgment is affirmed in part and reversed in part, and the cause is remanded with directions to set aside the verdict and grant a new trial on damages only.
Reversed and remanded.
HORTON, C. J., and PEARSON, J., concur.

. “The measure of damages for breach of contract may properly include profits lost by the plaintiff as a result of the defendant’s breach. Such lost profits may be allowed as damages whenever the loss was a natural consequence of the defendant’s breach of contract or whenever such a loss might reasonably be supposed to have entered into the contemplation of the parties at the time they executed the contract.
*731 “Moreover, in deciding whether the loss if any incurred by Mr. Cohen was the natural consequence of the defendant’s breach of contract, you should consider whether the motel project would have been constructed and would thereafter have been purchased by Mr. Shapro had the defendant fulfilled his part of the contract.
“To sum up, therefore, if you find that the plaintiff, Cohen, suffered a loss of expected profits, and if you find that this loss of profits was a natural and probable consequence of the defendant’s failure to execute the sublease and procure the subordination agreement, and that this loss of profits can reasonably be presumed to have been foreseen and in the contemplation of the parties when the Deposit Receipt was executed, then you may award to the plaintiff as damages the amount of those lost profits.”

. See note 2 on page 731.
*731 2. “If you find that the plaintiff is entitled to damages in the form of lost profits, then in computing these profits you may consider the evidence regarding the price at which Mr. Oohen could have sold the completed motel, and you should deduct therefrom all the legitimate expenses that he incurred or would have incurred in preparing for the purchase of the motel and in constructing the motel.”