143 So.2d 358 (1962)
Donald O. BREWER and Naomi Brewer, His Wife, Appellants,
v.
NORTHGATE OF ORLANDO, INC. et al., Appellees.
No. 2887.
District Court of Appeal of Florida. Second District.
July 6, 1962.
*359 Irving M. Felder of Felder & Bettinghaus, Winter Park, and Nathan Loeb, Orlando, for appellants.
Roe H. Wilkins, of Maguire, Voorhis & Wells, Orlando, for appellees.
WILLIS, BEN C., Associate Judge.
This is an appeal from a final decree which awarded money damages in the sum of $6,320.00 and costs to the Appellee cross-plaintiffs, Robert F. Cleary, Robert J. Whalen and Howard Cleary, against the Appellant cross-defendants, Donald O. Brewer and Naomi Brewer, his wife.
The cause originated in a suit by the Appellee, Northgate of Orlando, Inc. (hereafter referred to as Northgate) which sought to have a certain recorded lease declared null and void. In the lease in question, the Appellant cross-defendants Brewer were lessors and the Appellee cross-plaintiffs were the lessees. These parties will be referred to as "lessors" and "lessees" respectively. The lessees brought a cross-claim against the lessors seeking specific performance of the lease or, in the alternative, damages for breach. The lessees later abandoned their claim for specific performance.
In the final decree, the chancellor held the lease to be cancelled and terminated insofar as Northgate was concerned, and that Northgate held the property, which had been the subject of the lease, free and clear of the lease. In the same decree, it was held that the lessors had committed an anticipatory breach of the lease, and, by doing so, caused a total breach entitling the lessees to recover for the loss of their bargain. Money damages, as above stated, were awarded.
The Appellant lessors contend that the chancellor erred, first, in not finding that there had been a mutual rescission or cancellation of the lease between the lessors and lessees; and, second, in awarding damages which were not sustained by the evidence.
On February 3, 1960, the lessors were the owners of a parcel of land which they then leased to the lessees for a ten year term at minimum rent of $300.00 per month, payable in advance.[1] An initial payment of $600.00 was required representing the first and last months' rent for the term. The lessees provided this payment by delivering to the lessors a personal check for $300.00 and a cashier's check for $300.00. An undated addendum was executed in which the lessors contracted to build a certain specified one story building at their expense which the lessees would take into possession upon completion and begin the operation of their business therein. The original lease instrument demised the premises, "including the store and access and parking rights, for use as a drive-in store for sale of Freezette and food products of the type sold in retail Freezette stores and for any other lawful purpose."
The lease instrument also recites that it is made and executed "in duplicate." However, three copies were executed, one being kept by the lessors and the other two being provided for the lessees.
The term "Freezette" refers to a type of drive-in restaurant or food dispensary operating under a franchise of the Freezette Corporation and using the trade name of either "Freezette" or "Chick-N-Treat."
About a month after the signing of the lease, Northgate announced publicly that it planned to construct a large shopping center *360 on land adjacent to the leased premises. On March 23, 1960, or thereabout, the lessors contacted Mr. Charles W. Smith, a representative of the Freezette Corporation and the person who had aided in the negotiations leading to the execution of the lease, and advised him that they could not get financing for construction of the building and desired to cancel the lease. Mr. Smith went to the home of the lessors who delivered to him the two $300.00 checks the lessees had given at the time of execution of the lease. Smith apparently then had with him the lessees' two copies of the lease. It is not altogether clear whether Smith had these copies in his possession all the time or obtained them from the lessees at some time after execution. However, this is not material as under either circumstance he is not shown to have been lessees' agent. He returned one of the copies to the lessor, Mr. Brewer, but retained the other. There is some evidence that there was talk then about tearing off the signatures from the instruments and that Smith said he preferred to let the lessees do that themselves. No signatures were ever torn off of any of the copies.
In any event, Smith returned the checks and the remaining copy of the lease to the lessees. The checks were retained and not retendered to the lessors.
It is not shown that Smith was at any time more than negotiator or a mediator between the parties. He was interested because he was promoting the placing of franchises for the Freezette Corporation but does not appear to have been the agent of any of the parties to the lease. By letter dated April 11, 1960, lessees demanded of lessors performance of the lease or damages for breach of same. On the following April 13, they recorded their copy of the lease. On May 18, 1960, the lessors conveyed the subject property by deed to Northgate.
Subsequent to the date the checks were returned, the parties had some discussions which included some opportunities to the lessees to lease other property in the general vicinity. However, none of the available sites were exactly comparable to the leased premises, and they were not acceptable to the lessees. Nothing further was done by the parties until Northgate filed its suit in April, 1961, to declare the lease void. Thereupon, the lessees asserted their cross-claim against the lessors.
The Appellant lessors contend that the events of March, 1960, wherein the checks were returned to the lessees and not retendered by them, together with the other circumstances then outstanding, constituted a mutual rescission or cancellation of the lease or an accord and satisfaction between the parties.
A lease agreement may be rescinded by the consent of the parties by either a subsequent express agreement, or by an agreement implied from joint acts and conduct inconsistent with the pre-existent relationship. However, the mere attempt of one party to rescind without the consent of the other is not sufficient. 51 C.J.S. Landlord and Tenant § 230 a.
There was no express agreement in the case at bar, and we deem the chancellor to have been correct in finding that the acts of the parties did not constitute an implied rescission or cancellation. At the time of the return of the checks to them, the lessees learned from the lessors that they, the lessors, could not or would not construct the building as covenanted. This was an anticipatory breach of one of the material covenants of the contract which fully authorized the lessees to treat the contract as totally breached. By so treating the contract as totally breached, the lessees were privileged to retain the returned rent checks and seek damages for the loss of their bargain. The breach by the lessors was unequivocal and adamant. A re-delivery or retender of the checks would have been an empty, useless gesture. Even if they had been re-delivered and cashed by the lessors, this would have served only to *361 increase, by the sum of the checks, the damages which the lessees may have recovered.
The following quotation from 12 Am.Jur., Contracts, Sec. 439, appears to aptly set forth law applicable to this case:
"Where, upon a material breach by one party, the other party treats the breach as total by refusing to perform further and by maintaining an action for damages for such total breach, he is said to abandon further performance, but such abandonment is not technically a rescission of a contract, but a mere acceptance of a situation created by the wrongdoing of the adverse party. Such abandonment terminates or discharges the contract for purposes of further performance, but keeps it alive for the purposes of supporting an action and measuring the recovery. * * *"
In Kanter v. Safran, Fla. 1953, 68 So.2d 553, the doctrine of anticipatory breach was applied in favor of a lessor when there had been a repudiation of the lease by the lessee. Though the parties in that case are the reverse of the case at bar, the principles of law there announced are fully in harmony with those applied here. Also in accord is Stanley v. Anthony Farms, 1927, 93 Fla. 295, 112 So. 57.
With regard to the claim of accord and satisfaction, the law is clear that such a claim must be supported by a new contract, express or implied, between the same parties to the original agreement, and the last contract must be executed to have the effect of satisfaction. Kline v. Eugene Berninghaus Co., 1931, 102 Fla. 362, 135 So. 837; Sendoya v. Chattanooga Brewing Co., 1917, 73 Fla. 648, 74 So. 801. Whether there is an accord and satisfaction ordinarily involves a pure question of intention, which is as a rule a question of fact, but if the evidence creates no conflict concerning the intention, it is a question of law. United States Rubber Products v. Clark, 1941, 145 Fla. 631, 200 So. 385.
We are of the view the chancellor was fully justified to conclude from the evidence that there was no accord and satisfaction here.
The damages awarded were obviously based upon the testimony of a real estate broker, appraiser and consultant that there was an increase of 25% in the rental value of the leased premises after the date of execution of the lease; that the total increased rental value for the ten year term had been reduced to its present worth which is the sum of $6,321.60, "rounded off" to $6,320.00.
The lessees did not seek and were not awarded any sums for special damages but only for general damages which are the direct, natural and necessary result of the breach. The measure of damages other than probable special damages recoverable against a lessor by lessee for breach of a contract to deliver possession of the leased premises is the difference, if any, between the rent contracted to be paid and the actual rental value of the premises. Moses v. Antuono, 1908, 56 Fla. 499, 47 So. 925, 20 L.R.A.,N.S., 350; Hodges v. Fries, 1894, 34 Fla. 63, 15 So. 682. Also recognized in Lanzalotti v. Cohen, Fla.App., 1959, 113 So.2d 727; and Young v. Cobbs, Fla. 1959, 110 So.2d 651, 71 A.L.R.2d 1100.
The evidence in this case supports a finding that there was a difference in the contracted rent and rental value to the extent of a 25% increase over the contracted rent. This would amount to $75.00 per month for a ten year period. This was properly reduced to the present worth. Kanter v. Safran, supra, (text on p. 558 of 68 So.2d).
The Appellants further contend that the lessees were under a duty to mitigate their damages by utilizing opportunities to lease other property in the vicinity.
The general principles of law relating to mitigation of damages apply to lease agreements, as well as other contracts, *362 Young v. Cobbs, supra; Moses v. Antuono, supra; Hodges v. Fries, supra. This rule appears to be particularly applicable when there are claims for special damages. If it is applicable to general damages, which we do not decide, the evidence falls short of establishing that there was any clear opportunity for the lessees to mitigate their losses.
Finding no error in the final decree appealed from, the same should be and is hereby affirmed.
Affirmed.
SHANNON, C.J., and WHITE, J., concur.
NOTES
[1] Additional rent was required if gross sales from the premises exceeded $60,000.00 per year, but this provision is not material to the issues of this case involved in this appeal.