765 So.2d 920 (2000)
Charles A. WOLOWITZ, Appellant,
v.
THOROUGHBRED MOTORS, INC., and Rodney Dessberg, Appellees.
No. 2D99-3614.
District Court of Appeal of Florida, Second District.
August 25, 2000.
*921 Timothy L. Newhall of Hamrick, Perrey, Quinlan & Smith, P.A., Bradenton, for Appellant.
Melinda A. Delpech of Watrous & Delpech, P.A., Sarasota, for Appellees.
PARKER, Acting Chief Judge.
In this case arising out of the sale and purchase of an automobile, Charles Wolowitz, the plaintiff in the trial court, challenges the trial court's order granting final summary judgment in favor of the defendants, Thoroughbred Motors, Inc. (Thoroughbred) and Rodney Dessberg. Because the trial court granted summary judgment based on an affirmative defense neither pleaded nor proved by Thoroughbred, we reverse.[1]
In 1996, Nationwide Insurance Company declared a 1988 Jaguar XJS convertible a total loss as the result of an engine fire. Nationwide then offered the Jaguar for sale at a salvage auction. Thoroughbred, acting through Dessberg, purchased the Jaguar from Nationwide at the auction. At the time of purchase, Dessberg was aware that Nationwide had declared the Jaguar nonrebuildable and had assigned it a "salvage onlynonrebuildable" title. *922 Pursuant to section 319.30(3)(b), Florida Statutes (1995), once a vehicle has been declared nonrebuildable, the Florida Department of Highway Safety and Motor Vehicles is prohibited from issuing any title for the vehicle other than a "nonrebuildable" title, and the vehicle cannot be legally operated on Florida's public roads.
Shortly after Thoroughbred bought the Jaguar, Wolowitz's nephew learned that Thoroughbred was offering it for sale. Knowing that Wolowitz was interested in this type of Jaguar, Wolowitz's nephew spoke to Dessberg about it, specifically asking about the status of its title. Dessberg told Wolowitz's nephew that the Jaguar would be eligible for a "rebuilt" title after it was repaired.
In November 1996, Wolowitz met with Dessberg and inspected the Jaguar. Dessberg told Wolowitz that the Jaguar had been slightly damaged in a minor fuel fire, that the damage was easily repairable, and that once the repairs had been completed the Jaguar would be eligible for a "rebuilt" title. When Wolowitz asked Dessberg about the possibility that the Jaguar would not be eligible for a "rebuilt" title after he had incurred the expense of repair and restoration, Dessberg assured Wolowitz that he had successfully obtained "rebuilt" titles in similar situations in the past. Based upon Dessberg's representations, Wolowitz agreed to purchase the Jaguar for $8,000. No written contract was involved in this transaction.
After the sale, Dessberg contacted Nationwide three times in an attempt to change the title designation from "salvage onlynonrebuildable" to "rebuildable." Nationwide refused to change the designation. Despite knowing of this problem in December 1996, Dessberg did not tell Wolowitz of the title problem until September 1997. By that time, Wolowitz had invested significant funds in repairing and restoring the Jaguar.[2]
When Dessberg finally told Wolowitz of the title problem, the parties entered into a series of discussions concerning how to resolve the situation. Ultimately, Wolowitz sought to memorialize these discussions in writing. He put the terms of the resolution in writing, had the document reviewed by an attorney, and then presented it to Dessberg. This document, entitled a "contract confirmation," sets forth the following facts and provisions: (1) Thoroughbred sold the Jaguar to Wolowitz for $8,000 with the expectation that a "rebuildable" title would be obtained; (2) as of September 8, 1997, the date of the "contract confirmation," all parties knew that the Jaguar had a "salvage onlynonrebuildable" title; (3) as of September 8, 1997, all parties knew that there was a problem obtaining a "rebuildable" title and that Nationwide was not going to cooperate in the process; (4) on September 8, 1997, Wolowitz returned the Jaguar to Thoroughbred so that Thoroughbred could secure a "rebuildable" title within the next sixty days; (5) all parties acknowledged that the process of obtaining a "rebuildable" title might require obtaining a new vehicle identification number (VIN); (6) all parties agreed to cooperate in the process of obtaining a new VIN; and (7) if Thoroughbred did not obtain a "rebuildable" title within sixty days, Wolowitz would file a legal action seeking to recover the $11,370 that he had expended as of September 8, 1997. This document was signed by Wolowitz and Dessberg and witnessed by an attorney who happened to be at Thoroughbred's offices that day.
When Thoroughbred failed to obtain a "rebuildable" title for the Jaguar, Wolowitz filed a five-count complaint against Thoroughbred and Dessberg. Count I alleged breach of contract; count II alleged breach of implied warranties; count III alleged fraud in the inducement; count IV alleged negligent misrepresentation; and *923 count V alleged violations of the Florida Unfair and Deceptive Trade Practices Act. Wolowitz filed an amended complaint and later filed a second amended complaint adding a claim for punitive damages on the fraud count. Thoroughbred filed a counterclaim alleging breach of contract based on Wolowitz's failure to pay the entire $8,000 purchase price for the Jaguar.
After significant discovery, Thoroughbred moved for summary judgment as to all counts of the second amended complaint. Thoroughbred argued that the second amended complaint was based solely on the original oral contract, that the original oral contract had been superseded by the written "contract confirmation," and that Thoroughbred was entitled to judgment as a matter of law because the complaint was based on a contract that had been superseded. Thus, the only issue before the trial court was whether the "contract confirmation" superseded the original oral contract as a matter of law. During the hearing on the motion, the trial court considered whether the "contract confirmation" constituted a settlement agreement, a novation, or an accord and satisfaction. Ultimately, the trial court found that the "contract confirmation" constituted an accord and satisfaction which superseded the original oral contract and entered final summary judgment in favor of Thoroughbred on that basis. This judgment is improper for three reasons.
First, accord and satisfaction is an affirmative defense that must be specifically pled. See Fla. R. Civ. P. 1.110(d). In this case, Thoroughbred did not plead the affirmative defense of accord and satisfaction. Therefore, Thoroughbred waived the defense. See Fla. R. Civ. P. 1.140(b), 1.140(h)(1). Since the defense was waived, it should not have been considered by the trial court, much less used as the basis for granting summary judgment.
Second, the defense of accord and satisfaction requires proof that "the parties mutually intended to effect a settlement of an existing dispute by entering into a superseding agreement ... and ... actual performance with satisfaction of the new agreement...." Rudick v. Rudick, 403 So.2d 1091, 1093-94 (Fla. 3d DCA 1981). If there is no performance under the new agreement, then there is no satisfaction and the defense fails. Id. at 1094; see also Waxier v. Hockensmith, 474 So.2d 415, 417 (Fla. 2d DCA 1985); Vance v. Scanlon, 121 So.2d 709, 710 (Fla. 2d DCA 1960); Hannah v. James A. Ryder Corp., 380 So.2d 507, 510-11 (Fla. 3d DCA 1980). In this case, it is undisputed that Thoroughbred did not deliver a "rebuildable" title to Wolowitz at any time, much less within the sixty days allowed under the "contract confirmation." Therefore, because Thoroughbred did not perform under the alleged agreement, there was no satisfaction, and the defense of accord and satisfaction fails as a matter of law.
Third, the question of whether the parties "intended to effect a settlement of an existing dispute by entering into a superseding agreement" is generally a question of fact. See Brewer v. Northgate of Orlando, Inc., 143 So.2d 358, 361 (Fla. 2d DCA 1962); Hannah, 380 So.2d at 509. In this case, there is a dispute between the parties as to whether they intended the "contract confirmation" to be a settlement of their dispute that discharged their obligations under the original oral agreement. Wolowitz's affidavit testimony is that he never intended the "contract confirmation" to discharge either parties' obligations under the original oral agreement. Given this testimony, the intent of the parties presented a genuine issue of material fact that rendered summary judgment improper. For these three reasons, we reverse the trial court's order granting summary judgment in favor of Thoroughbred and Dessberg.
In defending the trial court's ruling, Thoroughbred asserts that the "contract confirmation" was actually a settlement agreement that the trial court properly enforced. However, this argument *924 fails for two reasons. First, settlement agreements are governed by the law of contracts. See Bateski v. Ransom, 658 So.2d 630, 631 (Fla. 2d DCA 1995); Woodfield Plaza, Ltd. v. Stiles Constr. Co., 687 So.2d 856, 857 (Fla. 4th DCA 1997). As such, they require proof that consideration was given by each party. In this case, there was no evidence that consideration was given by either party. It is clear from the terms of the "contract confirmation" that Thoroughbred agreed to do nothing other than what it originally contracted to do, i.e., deliver the Jaguar with a "rebuildable" title. An agreement to perform a preexisting obligation does not constitute consideration. See U.S. Home Acceptance Corp. v. Kelly Park Hills, Inc., 542 So.2d 463, 464 (Fla. 1st DCA 1989); South Miami Hosp. Found. v. Hernandez, 455 So.2d 1103, 1104 (Fla. 3d DCA 1984). It is also clear from the terms of the "contract confirmation" that the only possible consideration from Wolowitz was his agreement to forbear from litigation for sixty days. However, an agreement to forbear from litigation does not constitute legal consideration. See South Miami Hosp. Found., 455 So.2d at 1104. Accordingly, because neither party gave consideration for the "contract confirmation," it cannot constitute an enforceable settlement agreement.
Thoroughbred argues that it gave consideration for the "contract confirmation" by agreeing to pay Wolowitz $11,370 if it failed to deliver a "rebuildable" title within sixty days. However, this is a misstatement of the terms of the "contract confirmation." Nothing in the "contract confirmation" required Thoroughbred to pay anything if it did not deliver a "rebuildable" title within sixty days. Rather, the "contract confirmation" merely stated what damages Wolowitz would seek in an appropriate legal action if Thoroughbred failed to deliver a "rebuildable" title. Therefore, contrary to Thoroughbred's assertions, it gave no consideration for the "contract confirmation," and no enforceable settlement agreement was created as a matter of law.
Second, before a trial court may enforce a settlement agreement, the proponent of the agreement must prove that the parties mutually agreed on every essential element of the agreement. See Bateski, 658 So.2d at 631. In this case, there is a question of fact concerning whether the parties intended the "contract confirmation" to discharge all prior obligations. This question of fact would make summary judgment based on the alleged settlement agreement improper. Therefore, even if the trial court's order had been based on a finding that the "contract confirmation" was a settlement agreement, the order would nevertheless require reversal due to the failure of consideration and the fact questions concerning intent.
Much of Wolowitz's argument addressed the issue of novation. However, both parties and the trial court agreed that the "contract confirmation" did not constitute a novation.[3] We agree because neither side gave consideration for the "contract confirmation" and because fact questions exist concerning the parties' intent when signing the "contract confirmation."
Since we are remanding this case to the trial court for further proceedings, we address Wolowitz's argument concerning the admissibility of the "contract confirmation" at trial. Wolowitz filed a motion in limine, seeking to exclude the "contract confirmation" from evidence.[4] The trial court denied *925 this motion. We affirm this ruling because we cannot say based on this record that the "contract confirmation" would be inadmissible under all circumstances.
Wolowitz argues that if the "contract confirmation" does not constitute an accord and satisfaction, a settlement agreement, or a novation as a matter of law, then the "contract confirmation" is irrelevant to any issue before the trier of fact and therefore is inadmissible. While we have concluded that the "contract confirmation" does not constitute an accord and satisfaction, a settlement agreement, or a novation as a matter of law, we do not agree that the "contract confirmation" is irrelevant. The "contract confirmation" clearly establishes many of the facts upon which Wolowitz's action is based. See § 90.401, Fla. Stat. (1995). For example, it establishes the existence of the original oral agreement, many of the terms of the original oral agreement, and both parties' actions following the original oral agreement. We recognize that this information is also available from other sources, namely the testimony of Wolowitz and Dessberg. Thus, whether the trial court should exclude the "contract confirmation" as "needless presentation of cumulative evidence" under section 90.403, Florida Statutes (1995), is a question that can only be answered based on the proceedings at trial. See also § 90.612(1)(b), Fla. Stat. (1995) (allowing the trial judge to exercise reasonable control over the presentation of evidence to avoid needless consumption of time).
In the alternative, Wolowitz argues that even if the "contract confirmation" is relevant it should nevertheless be excluded under section 90.408, Florida Statutes (1995), which he contends bars all evidence of unsuccessful settlement negotiations. However, this is too broad a reading of the statute. Section 90.408 excludes evidence of settlement negotiations only when the evidence is offered to prove liability, the absence of liability, or value. Thus, evidence of settlement negotiations is admissible to establish other relevant facts. See William R. Eleazer & Glen Weissenberger, Florida Evidence 209 (1998 ed.). To the extent that the "contract confirmation" addresses issues other than liability and value, it would not necessarily be excluded under section 90.408. Therefore, the decision as to the admissibility of the "contract confirmation" must be left to the trial court based on the events at trial and reasons given for offering the "contract confirmation" into evidence.
Reversed and remanded.
BLUE and WHATLEY, JJ., Concur.
NOTES
[1] On Thoroughbred's counterclaim, the trial court entered summary judgment in favor of Wolowitz and awarded him $11,370. Thoroughbred did not appeal that ruling, so we do not address that award in this opinion.
[2] The parties do not dispute that as of September 1997 Wolowitz had paid Thoroughbred $5,000 toward the $8,000 purchase price and had expended approximately $6,370 for repairs and restoration.
[3] In its brief, Thoroughbred claims that neither party raised the issue of novation prior to the summary judgment hearing. However, Thoroughbred's own pleadings show that it raised novation as an affirmative defense. Therefore, contrary to Thoroughbred's contention, Wolowitz's argument should not be disregarded because Wolowitz was properly responding to an affirmative defense raised by Thoroughbred.
[4] It appears from the record that Wolowitz's primary concern is the handwritten provision concerning obtaining a new VIN for the Jaguar. Apparently, re-VINing a vehicle is a "grey legal area."