Frosty Land Foods International, Inc. (hereinafter Frosty Land) and Lorenz Transport and Ship Lines, Inc. (Lorenz), a wholly-owned subsidiary of Frosty Land, filed suit against E.A. Gulledge and Iowa Meat Distributing Company, Inc. (Iowa), alleging that Gulledge, while an officer, employee and director of both Frosty Land and Lorenz, violated his fiduciary duty to the plaintiff corporations by engaging in a competing business to the detriment of those plaintiff corporations. The plaintiff corporations further alleged that Gulledge used their men and equipment to further his business and that he usurped corporate opportunities of the plaintiff corporations to his own use, converted Frosty Land's equipment and property and was also guilty of gross negligence, indifference, or bad faith in failing to perform his duties as the chief executive officer in a diligent manner.
The defendants denied that Gulledge, acting either through Iowa or by himself, violated any fiduciary or confidential duty to the plaintiffs. By stipulation, all parties agreed before trial that they would adjudicate the question of any monies owed by the parties to each other.
After a hearing ore tenus, the trial court entered judgment in favor of Frosty Land on all counts. *Page 62 
Defendants filed a motion for new trial or to alter, amend or set aside the judgment. The trial court entered an amended order correcting the amount of damages awarded but denied a new trial. Defendants appeal. We affirm.
The plaintiffs, Frosty Land and Lorenz, were corporations primarily involved in the business of processing and distributing beef, respectively.
From 1972, defendant E.A. Gulledge occupied a number of executive positions with the plaintiff corporations. He was director of sales and distribution/transportation for Frosty Land from November, 1976 through mid-April, 1977. He then became chief operating officer, president, and a corporate director of Lorenz, a subsidiary formed at that time for the sole purpose of distributing/transporting Frosty Land meat.
In May, 1977, while employed in the above capacities with Lorenz and as vice president and corporate director of Frosty Land, defendant Gulledge first approached an officer of First Alabama Bank of Montgomery with respect to formation of Iowa. The same month, Gulledge, still so employed by the plaintiffs, solicited an order for the sale of beef on his own behalf as Iowa Meat Distributing Company. The order was solicited from Clyde Porter, the meat buyer for "Bi Lo," a grocery chain of South Carolina, which was the largest principal customer of Frosty Land, purchasing approximately thirty-seven percent of Frosty Land's meat. Gulledge approached a Lorenz driver about making this haul, told the driver he was going into business for himself, asked the driver not to tell anyone about the trip, and ultimately used a Lorenz driver, tractor, and trailer to deliver his meats. Gulledge told the driver that he "could come to work for him" and asked him to make a similar delivery the following week. As Gulledge put it, he "had made a decision to leave the corporation and was looking out for [his] own self" as of May, 1977. Also in 1977, Gulledge used Lorenz's equipment to haul two loads of building supplies to the home construction site of Clyde Porter, the "Bi Lo" buyer, which trips were not authorized by plaintiffs.
In September, 1977, Gulledge approached another Lorenz driver about working for him and asked the driver to make a haul for his company to "Bi Lo." The driver made the run for Gulledge on his instructions in a Lorenz tractor and later made a trip to Atlanta using a Lorenz tractor to pick up a trailer for Gulledge.
In late September, 1977, Gulledge informed Larry Neuhoff, president of Frosty Land and chairman of the board of Lorenz, that he was leaving his employment. Plaintiff corporations allege that he never told his employer about the use of Lorenz men and equipment to make deliveries for Iowa Meat. Instead, these facts were first learned as the result of an investigation. Gulledge testified that he informed Neuhoff on that same day.
After leaving Frosty Land/Lorenz, Gulledge continued delivering meat to "Bi Lo" as Iowa Meat Distributing Company. Upon leaving, he put Jim Willis, who was employed full time as the dispatcher in charge of equipment and drivers at Lorenz, on the payroll of Iowa Meat. Willis had been aware of Gulledge's using Lorenz drivers to make hauls for Iowa Meat in May and September. While still employed by Lorenz and after being put on Gulledge's payroll, Willis, without the knowledge of Lorenz, twice instructed Lorenz employees to use Lorenz's equipment at Lorenz's expense to repair Gulledge's equipment. He dispatched a Lorenz driver on a trip north which resulted in bringing a Gulledge tractor back to Montgomery. He solicited other drivers to make hauls for Iowa while working full time at Lorenz. Gulledge admitted that he and Willis were in direct contact by telephone during this time. Willis remained on Gulledge's payroll and finally left Lorenz to begin officially working for Iowa in March, 1978.
Gulledge, operating as Iowa Meat, continued delivering meat to "Bi Lo," increasing the number of loads each month, through the end of 1977. The number of loads shipped by Lorenz to "Bi Lo" began decreasing *Page 63 
in October, 1977, after Gulledge left.
Iowa Meat accounts reflected a cash flow income of some $75,794.49 for the period of May through December, 1977. In late December, 1977, E.A. Gulledge incorporated his new business as Iowa Meat Distributing Company, Inc. The corporation listed as an asset some $79,650 in cash beginning its first year in January, 1978.
In early July, 1978, Jane Porter, wife of "Bi Lo" meat buyer, Clyde Porter, and living in South Carolina, was added to the Iowa payroll. Also, early that month, "Bi Lo" further cut back on its beef orders to Frosty Land/Lorenz. Frosty Land/Lorenz had been selling and distributing to some ninety-three "Bi Lo" stores for over three years. By January 16, 1978, that number had dropped to fifty-seven. After five months in 1978, that number had decreased to fifty-five. This drop resulted in a loss of gross revenues of some $38,000 to plaintiffs, as compared to the same period in the preceding year. As of September 30, 1980, ninety to ninety-five percent of Iowa's business consisted of its "Bi Lo" accounts.
Gulledge used Lorenz men and equipment to ship his goods and repair and pull his tractors at an estimated cost of $7,643 between May and December, 1977.
Between February and September, 1977, Frosty Land/Lorenz drivers submitted and were paid for driving 1,834,860 miles more than they actually drove. The overage resulted in overpayments of some $30,509 to company drivers. Throughout this period, Gulledge was the officer charged with the responsibility for distribution/transportation, first as the officer in charge of sales and distribution with Frosty Land and later as president of Lorenz, the transport company, beginning in April, 1977.
The defendants first argue that the trial court erred to reversal in allowing the plaintiffs' use of tape recordings of certain telephone conversations between Gulledge and Willis in its examination of Gulledge. Defendants' assignment of error is based on the proposition that proper predicate or foundation was not laid for the use of the recordings.
Assuming, without agreeing, that the proper predicate or foundation was not laid, this objection is still not well taken, because defendants stipulated prior to trial that all objections were to be waived and that the trial court would only consider evidence which was relevant and admissible. We hold that defendants' stipulation precludes the matter being considered here.
The defendants next argue that the court erred in failing to grant a new trial because the trial court's judgment was based on actual findings that were not supported by the evidence.
This case was tried without a jury. Conflicting evidence was taken orally, through exhibits and also by the admission of depositions and statements stipulated to by the parties.
When a trial court makes findings of fact based on evidence presented ore tenus, those findings of fact will not be disturbed on appeal unless clearly erroneous or manifestly unjust, and this rule is especially applicable in cases in which the trial court makes its findings of fact after hearing conflicting evidence; every presumption will be indulged in favor of the court's findings, and those findings will not be disturbed unless palpably wrong. Leslie v. Pine Crest Homes,Inc., 388 So.2d 178 (Ala. 1980).
After careful review of the record, we find that the trial court's findings of fact and application of law are clearly supported by the evidence, and they will not be disturbed by this Court on appeal.
The judgment is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur. *Page 64