This case evolves from a dispute over a construction subcontract. Separate suits were filed in different counties, and the second suit filed was transferred to the county of the first suit, where the two suits were consolidated for trial. Appellant was the plaintiff in the second suit and defendant in the first.
Hamrick Construction Company (Hamrick) was the general contractor for two municipal housing projects in DeKalb County. As general contractor, Hamrick subcontracted with Rochester Plumbing Company (Rochester) to provide the labor associated with supplying plumbing to the units. The dispute between these two centers around a provision of the general contract that wasnot explicitly made a part of the subcontract. That provision concerned additional payments to cover costs of excavating through rock, if rock was encountered at the construction site.
This dispute arose when Rochester claimed that it should receive some payment, in addition to its subcontract payment, for excavating rock. Hamrick refused, claiming that Rochester was not entitled to any such payment, and that only Hamrick was responsible for the excavation of rock at the site. Rochester, then, refused to complete the project until some payment was made.[1] *Page 883 
As a result, Hamrick filed suit in DeKalb Circuit Court. Subsequently, but prior to being served in connection with that suit, Rochester filed his own action in Calhoun Circuit Court. The Calhoun Circuit Court transferred Rochester's suit to DeKalb County, where it was consolidated with Hamrick's suit. The matter proceeded to trial, and the jury returned its verdict disallowing either party's recovery from the other. Rochester appeals from the judgment on this verdict, citing four alleged errors:
 1. The Calhoun Circuit Court erred in transferring his case from Calhoun County to DeKalb County.
 2. The DeKalb Circuit Court erred in not transferring Hamrick's suit from DeKalb County to Calhoun County.
 3. The trial court erred in ruling that, as a matter of law, the general contract between Hamrick and the city was not incorporated by reference into the subcontract between Rochester and Hamrick.
 4. The trial court erred on post-judgment motion in not setting aside the verdict as inconsistent and the product of great confusion on the part of the jury.
 The Venue Issue
In transferring the case to DeKalb County, the Calhoun Circuit Court noted that the prior action in DeKalb County would act as a bar to the suit as against those defendants who were also parties in the DeKalb County suit. As to those parties, Rochester's claims would be relegated to compulsory counterclaims. The Calhoun Circuit Court then noted that the suit against the remaining defendants should not stand separate and apart from the DeKalb County suit.
Instead of granting the Defendants' motion to dismiss, the court transferred the case to DeKalb County in an effort to allow Rochester to avoid the added delay and expense of joining the additional parties to that suit and having them properly served. Venue would have been proper in either county.
Rochester objected to the change of venue, but did not seek appellate review at that time. Now, he seeks to raise the issue in this appeal. He cannot.
Both of Rochester's first two issues can be dealt with rather summarily by noting that the disposition of a motion for change of venue, whether a motion by one of the parties or the court's own motion, as here, may not be reviewed by appeal after final judgment. The proper procedure is to seek appellate review by means of extraordinary writ, i.e., to file a petition for the writ of mandamus. Davis v. Marshall, 404 So.2d 642 (Ala. 1981).
As an aside, we note that in Davis the appellant did not object to the change of venue, as Rochester did, prior to raising it on appeal. That is not a material point of difference. Consequently, we cannot now review the first two issues relating to change of venue.
 The Merger-of-Contract Issue
The trial court ruled that Rochester could not recover under the rock excavation clause, which was contained only in the general contract. The court, however, after allowing Rochester to go forward with proof that he excavated rock, appropriately did instruct the jury on the law of damages under the theory ofquantum meruit.
Rochester contends that the trial judge erred in not finding the rock excavation clause of the general contract to have been incorporated by reference into the subcontract, because, he argues, the subcontract made specific provision for incorporation of the terms of the general contract. Specifically, Rochester points to the language within the subcontract providing that the architect's "specifications, schedules and drawings are made a part of said general contract, and . . . are now made a part of this subcontract." We note, however, that that language was limited in its scope by the concluding clause "insofar as they apply and the parties hereto desire to contract *Page 884 
with reference to a part of said work."
Additionally, Rochester points to the language of the subcontract which explained his duties to "furnish all labor and materials and perform all work necessary to complete the following . . . namely: Plumbing and site utilities complete. . . ." Rochester here contends that this work could not have beencompleted without excavation of the rock; and, he says, because he was to perform all labor required, his subcontract necessarily incorporated by reference the rock excavation clause of the general contract.
Rochester concedes, however, that neither he personally, nor anyone under his employ, is trained or licensed to perform the blasting work required for the excavation. Thus, a qualified third party was required to perform this work. Rochester counters this fact by stating that he could have located (and in fact did locate) someone who was qualified to do the job.
The otherwise persuasive nature of Rochester's contention is overcome by the application of the concepts of nondelegable duty and strict liability. It is well understood that a general contractor cannot escape all potential civil liability by subcontracting extra-hazardous activities. The normally applicable "independent contractor" defense does not, necessarily and of itself, shield the general contractor from liability in this kind of case. Knight v. Burns, Kirkley Williams Const. Co., 295 Ala. 477, 331 So.2d 651 (1976); and, for a discussion of strict liability, see Harper v. RegencyDevelopment Co., 399 So.2d 248 (Ala. 1981).
When this nondelegable duty concept is coupled with the strict liability doctrine applicable to extra-hazardous activities, the concomitant right of control of such activities by the general contractor dictates a strict construction of contract language, in the context of a subcontractor's claim of a right to conduct blasting operations by way of incorporation by reference.
This is not to say that a general contractor is legally precluded from authorizing a subcontractor to perform extra-hazardous activities contemplated by the general contract. It is to say, however, that the subcontract language must be clear and unequivocal before the general contractor will be legally required to forgo its right of direct control over such activities.
Furthermore, state law abundantly supports the general proposition that "it is the province of the court to construe written instruments, and declare their legal effect." Boykin v.Bank of Mobile, 72 Ala. 262, 269 (1882). Also, "[i]t is, of course, fundamental in our law that it is the duty of the court and not the jury to `analyze and determine the meaning of a contract . . . when its terms are clear and certain, and also [to] ascertain whether or not it is ambiguous. . . .'" C.F.Halstead Contractor, Inc. v. Dirt, Inc., 294 Ala. 644, at 649,320 So.2d 657, at 661 (1975).
The trial judge here looked at the documents and found no ambiguity. After scrutinizing the documents and hearing from the parties, he determined that the subcontract did not incorporate by reference the rock excavation clause of the general contract. Applying the principles discussed above, we hold that the trial court was correct in its rejection of Rochester's claim of merger of contract. Likewise, the trial court correctly accorded Rochester the benefit of submitting for the jury's consideration the quantum meruit theory of recovery.
 The Validity-of-the-Verdict Issue
The final issue presented is the validity vel non of the verdict reached by the jury. In this case, involving claims and counterclaims, the jury determined that neither party should recover from the other. Rochester claims that such a verdict is inconsistent with the evidence presented at trial and is the product of great confusion on the part of the jury. Rochester contends that the jury was constrained to believe either one party or the other. *Page 885 
This argument, to some extent, discounts the fundamental function of the jury. While the function of the jury has been more eloquently defended elsewhere, we take this opportunity to reiterate that it is the jury's function to listen to the evidence presented and to credit each piece of evidence and each witness's testimony with the weight which it believes to be appropriate.
It is inherent in this system that jurors will give greater weight and credibility to some evidence than they will to other evidence. Likewise, the jury may believe certain testimony offered by a witness while disbelieving certain other testimony given by that same witness. Doing so, of itself, does not render the jury's findings of fact inconsistent. When the jury has completed its deliberations and agreed upon a verdict, that verdict, if supported by any credible evidence, will not be disturbed unless it is so clearly against the great weight and preponderance of the evidence as to be unjust.
Finding no error, we hold that the judgment appealed from is due to be, and it hereby is, affirmed.
AFFIRMED.
All the Justices concur.
[1] It is not clear from the record whether Rochester personally performed any of the rock excavation. In view of this, as we understand it, Rochester's claim is based upon his alleged right to proceed on the rock excavation work and to be paid therefor at the price fixed in the general contract. Apparently, the trial court's jury instruction on the quantum meruit theory of damages was based on the supposition that the jury was free to find that either Rochester, or someone under contract with Rochester, had in fact performed rock excavation before the dispute arose between Rochester and Hamrick.