503 So.2d 819 (1987)
EAGER BEAVER BUICK, INC.
v.
Charles BURT.
85-614.
Supreme Court of Alabama.
January 2, 1987.
Rehearing Denied February 20, 1987.
*820 Sam McCord of Donovan, McCord & Hoffman, Birmingham, and Patricia C. Kellett of Kellett & Gillis, Fort Payne, for appellant.
Roger Killian, Fort Payne, for appellee.
BEATTY, Justice.
This is an appeal by a defendant, Eager Beaver Buick, Inc. ("Eager Beaver"), from a judgment in the amount of $18,850 entered in favor of the plaintiff, Charles Burt, in plaintiff's action for breach of a written employment contract. We affirm in part, reverse in part, and remand.
The case was tried to the trial court ore tenus without a jury. That court entered an order which is set out in pertinent part below:
"The plaintiff seeks to recover for breach of an employment contract. His complaint also charges the defendants with conspiracy and interference with contract. The case was tried before the court without a jury, and counsel for the parties have submitted briefs in support of their respective positions.
"The court hereby makes the following findings:
"1. The plaintiff went to work for the defendant, Eager Beaver Buick, on March 4, 1983, as sales manager. Eager Beaver is an automobile dealership located in Jackson County, Alabama. The plaintiff's initial employment was for a trial period of 90 days. At the end of the trial period, the plaintiff entered into a 12-month contract of employment with Eager Beaver, the terms of which are set out in a written agreement.
"2. During the term of the plaintiff's employment or just prior thereto, Eager Beaver Buick was assessed by the Alabama Department of Revenue with a sizeable sales tax delinquency which had resulted from Eager Beaver's failure to collect certain sales tax on the sale of automobiles. The particular tax was not required on sales if delivery of the automobile to the purchaser was made outside Jackson County. The Department of Revenue advised Eager Beaver that credit would be given against the assessment for any deliveries made outside Jackson County provided proof of such out-of-county deliveries was presented to the Department in the form of a verified certificate signed by both the purchaser and the salesman who delivered the vehicle.
"3. The sales tax assessment was based on approximately 560 sales. In spite of the fact that only some of these sales involved delivery outside Jackson County, the owners of Eager Beaver, William E. Penney and Randall Robinson, launched a campaign to obtain a signed certification of out-of-county delivery from all 560 purchasers.
"4. As a part of this campaign, the owners called upon the plaintiff, as sales manager, to direct the salesmen to sign the certificates and acquire the needed signatures of purchasers. The plaintiff was to instruct the salesmen that they should get the signatures, regardless of where delivery was made, and that if they failed to do so, they could pay the tax themselves, or leave. The plaintiff refused to instruct the salesmen as directed because such instruction would require the salesmen to unlawfully falsify documents.
"5. When the plaintiff refused to comply with the directions he had been given, he was told by one of the owners that he could either get the job done or they would not need him anymore. The plaintiff continued his refusal to instruct the salesmen as requested.
"6. The campaign to acquire the needed signatures continued with the owners giving instructions to the salesmen; eventually, most of the needed signatures were acquired.
"7. As a result of his refusal to instruct the salesmen as the owners had directed, the plaintiff's relationship with them deteriorated to the point that he *821 and one of the owners challenged each other to a physical confrontation, whereupon the plaintiff resigned his employment.
"8. The plaintiff discharged his responsibilities as sales manager in a competent and efficient manner consistent with the reasonable expectations of one in that position.
"9. The plaintiff's resignation resulted from the demands made by the owners of Eager Beaver that the plaintiff instruct the salesmen to engage in conduct which, in some instances, was unlawful, and the plaintiff's refusal to comply with these demands. Under these circumstances, the plaintiff's resignation was justified and his further performance of the employment contract excused.
"10. It is implied by law that contracts of employment contemplate work which can be lawfully performed. When an employer insists that an employee perform unlawful acts and harasses or penalizes the employee for his refusal to perform such acts, the employer has breached an implied condition of the employment contract. By such conduct on the part of Eager Beaver's owners, Eager Beaver breached its contract in this case.
"11. The plaintiff could reasonably have expected to earn compensation of $40,000 during the one year contemplated by the employment agreement. He was employed by Eager Beaver only two months of that period and earned approximately $4900. He took a job after leaving Eager Beaver with an average annual salary of $16,250. Consequently, the defendant suffered a loss in earnings of $18,850.
"In accordance with the above findings, IT IS ADJUDGED AND DECREED that the plaintiff is awarded judgment against the defendant, Eager Beaver Buick, Inc., in the sum of $18,850 plus court cost, for breach of the employment contract. The plaintiff's claim for punitive damages as well as the other claims made by plaintiff are denied." (Emphasis added.)

I.
When a case has been tried ore tenus, every presumption is indulged in favor of the trial court, and its findings will not be disturbed on appeal unless palpably wrong or manifestly unjust. Gulledge v. Frosty Land Foods International, Inc., 414 So.2d 60 (Ala.1982).
While a review of the record does not establish that a challenge to a physical confrontation between plaintiff and one of the owners occurred prior to plaintiff's tender of his resignation, it does establish a tense and disagreeable working relationship. This difference, under these factual circumstances, does not make the trial court's findings palpably wrong or manifestly unjust. Indeed, the finding that plaintiff's resignation from his employment was justified is amply demonstrated.
Eager Beaver, in effect, concedes that it breached its contract with Burt when it asked him to commit an illegal and fraudulent act. However, the gravamen of Eager Beaver's defense is that Burt could not maintain his action against Eager Beaver for a breach of contract which occurred two months before Burt tendered his resignation. In other words, Eager Beaver argues that, by waiting two months in hopes "that possibly this thing would die down and everybody would cool off and it would go away," Burt waived the breach of contract or is estopped from bringing an action thereon. We need not reach this issue of waiver. Indeed, we will assume, without deciding, that Eager Beaver did not breach its contract with Burt by merely requesting that he do an unlawful act since, upon his refusal, Eager Beaver did not overtly fire Burt. Nevertheless, the trial court's determination that Eager Beaver is liable to Burt is due to be affirmed because, from the evidence, the trial court, in effect, found that after Burt refused to falsify the certificates, Eager Beaver interfered with the performance of his employment contract, which interference was alleged by the plaintiff in his complaint. This interference, in and of itself, amounted to a breach of that contract.
*822 Generally, contracting parties impliedly promise not to act so as to hinder, prevent, or make more burdensome the other's performance. A breach of this implied promise may be construed as an actual breach of the contract, thereby giving the other party a cause of action on the contract. See 3 A. Corbin, Corbin on Contracts § 571, "Implied Promise Not To Hinder Or Delay Performance By The Other Party," at 349-51 (1950); California v. United States, 151 F.Supp. 570 (N.D.Cal. 1957). In most cases, "prevention or hindrance should clearly be regarded as wrongful." 4 A. Corbin, Corbin on Contracts § 947, "Prevention Or Hindrance Of Performance As A Breach," at 813-16 (1950). Furthermore, that treatise states at 814:
"It is practically immaterial whether the implied promise is a fiction of the court to attain a desirable result or is a justifiable inference of fact. In some cases the wrongful conduct could have been treated as a tort; and it can still be so treated if the courts find it of advantage in the course of justice. Even so, it can be made use of both for defense and for attack, in contract actions."
As pointed out above, Eager Beaver did not explicitly fire Burt for refusing to falsify the certificates. Instead, as the trial court found, Eager Beaver made Burt's continued performance extremely difficult and burdensome. Burt was told that he would either falsify the certificates or "we don't need you around here." Burt testified that he was harassed to such an extent that he could not, as sales manager, keep up the morale of the dealership and the salesmen who supposedly worked under him. He was accused of being disloyal and was told that he ought to be finding another job. When Burt tendered his resignation on August 19, 1983, to be effective August 27, 1983, his resignation was rejected; however, he was told to wait to resign until another owner, Randall Robinson, returned from vacation. The next day, August 20, the president of Eager Beaver, Bill Penney, went by Burt's office and picked up a bulletin board and threw it into Burt's office. Burt threw it back out. The substance of this series of events and activity by Eager Beaver establishes that the plaintiff, Burt, was harassed and antagonized to the point that he was no longer able to perform his job. Eager Beaver is correct in its assertion that it was not the bare request that he perform an illegal act that caused Burt to resign. Rather, it was the conduct on the part of Eager Beaver upon Burt's refusal to commit fraud that left him no choice but to resign. Burt's testimony is clear that, were it not for the hindrance and interference with his performance by Eager Beaver, he would not have resigned.
"One who sues for damages, alleging as a breach the prevention or hindrance by the other party, must prove that the condition on which his rights depended would have occurred or been performed but for the prevention or hindrance. Those terms presuppose a relation of cause and effect."
Id. at 816-17. The plaintiff, in this case, has met his burden of proving that there was a breach of contract, and the judgment holding Eager Beaver liable is due to be affirmed.

II.
Eager Beaver next argues that the damages awarded the plaintiff were excessive because Burt failed to produce Eager Beaver's financial statements or other data as the basis for proving Burt's approximate share of profits he lost as a result of the breach. Eager Beaver contends that, while plaintiff adduced evidence which clearly established the formula by which the profits accruing to him under the contract could be determined, plaintiff, nevertheless, did not prove, with data available to him, his lost profits with that degree of certainty that the nature of this particular case would permit, citing Brendle Fire Equipment, Inc. v. Electronic Engineers, Inc., 454 So.2d 1032 (Ala.Civ.App.1984). We agree.
In Paris v. Buckner Feed Mill, Inc., 279 Ala. 148, 182 So.2d 880 (1966), cited in Brendle Fire Equipment, supra, the Court quoted from and followed the case of Brigham & Co. v. Carlisle, 78 Ala. 243 *823 (1884). In Brigham, the Court held the following:
"There are numerous cases, however, in which profits constitute, not only an element, but the measure of damage. While the line of demarcation is often dim and shadowy, the distinctive features consist in the nature and character of the profits. When they form an elemental constituent of the contract, their loss the natural result of its breach, and the amount can be estimated with reasonable certainty, such certainty as satisfies the mind of a prudent and impartial person, they are allowed. The requisite to their allowance is some standard, as regular market values, or other established data, by reference to which the amount may be satisfactorily ascertained...."
(Emphasis added.) 78 Ala. at 248. The employment contract in the present case expressly provided that, in addition to a salary and other "perks," Burt was to receive on a monthly basis an amount equal to four percent of Eager Beaver's "combined variable net profit" as a part of an incentive plan. Thus, profits were an "elemental constituent of the contract." Id.
In Southeast Alabama Broadcasting Co. v. Farrell, 434 So.2d 756 (Ala.1983), a case somewhat similar to the present case, the plaintiff/employee brought an action against his employer for breach of contract. One of the issues raised by the employer on appeal was whether the jury had improperly assessed plaintiff's damages. The plaintiff's contract in Farrell, supra, provided that he was to receive a percentage of gross revenues as opposed to a percentage of profits:
"Under his employment contract, Farrell was to be paid a revenue incentive equal to one percent (1%) of the total gross revenues derived from station operations during each calendar year of his three-year employment period."
434 So.2d at 760. Citing Paris v. Buckner Feed Mill, Inc., supra, this Court held that, based upon specific evidence adduced at trial, which included the testimony of the employer's comptroller as to the employer's reasonable projection of gross revenues, that aspect of the plaintiff's damages was not based upon either conjecture or speculation:
"At bottom, the issue is whether Farrell adduced evidence of gross revenues which were reasonably within the contemplation of the parties or foreseeable at the time the parties contracted. Scott Southern Division Employees Credit Union v. Loftin, 50 Ala.App. 571, 281 So.2d 283 (1973). Under this requirement Farrell was required only to prove gross sales revenue with reasonable certainty, in order to present a reasonable estimate of the amount of revenue on which to base his loss. Paris v. Buckner Feed Mill, Inc., 279 Ala. 148, 182 So.2d 880 (1966); United Bonding Ins. Co. v. W.S. Newell, Inc., 285 Ala. 371, 232 So.2d 616 (1970). Farrell's evidence of the station's gross revenue for 1982 came from the testimony of the station's bookkeeper, who was also Southeast's comptroller. She gave as the station's reasonable projection of gross revenue for 1982, based upon that of 1981 and gross revenues for the first two months of 1982, ... `over a million dollars,' and she stated that $10,000 would be a fair figure for 1982 if Farrell was due one percent of the total gross revenues. Under that evidence, it cannot be concluded that this aspect of Farrell's damages was based upon either conjecture or speculation."
434 So.2d at 760. (Emphasis added.)
As noted by the trial court in this case, Burt had actually earned only approximately $4,900 in the two months of his contract he had worked. This evidence, along with the testimony of Burt and the owners of defendant Eager Beaver, established that Burt could have reasonably expected to earn $30,000 in that year. However, the only evidence tending to establish that Burt could have expected to earn $40,000 is his own testimony. Thus, to the extent this extra $10,000 in damages represented Burt's contracted-for share of the Eager Beaver profits, this amount was not proved by any standard or other established data, as required by the Paris and Farrell cases, and was awarded based solely on conjecture or speculation. Therefore, the damages awarded to the plaintiff are *824 excessive by $10,000; the damages portion of the judgment is reversed.

III.
Eager Beaver also raises an issue with respect to the propriety of the trial court's denial of its motion for change of venue. It is well established that this issue cannot be raised by appeal. Rochester v. Hamrick Construction Co., 481 So.2d 881, 883 (Ala.1985); Davis v. Marshall, 404 So.2d 642, 643 (Ala.1981).
For the foregoing reasons, the judgment below is affirmed in part and reversed in part, and the case is remanded for entry of an order consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH DIRECTIONS.
MADDOX, ALMON and HOUSTON, JJ., concur.
TORBERT, C.J., concurs specially.
TORBERT, Chief Justice (concurring specially).
The interference with the performance of the contract to which the majority opinion refers is interference by a party to the contract, which under these facts amounts to a breach of contract. This is not a case where a non-party to the contract tortiously interferes with the relationship of the contracting parties.