540 So.2d 720 (1989)
ELMORE COUNTY COMMISSION, et al.
v.
Barbara RAGONA, individually, and as mother and next friend of Thomas James Ragona, a minor.
86-539.
Supreme Court of Alabama.
January 27, 1989.
*721 G. Houston Howard II of Howard, Dunn, Howard & Howard, Wetumpka, for appellants.
Robert D. Segall and Lee H. Copeland of Copeland, Franco, Screws & Gill, Montgomery, for appellee.
*722 ALMON, Justice.
This personal injury action was filed in Montgomery County by Barbara Ragona and Thomas James Ragona, a minor, by and through his next friend, Barbara Ragona, against Elmore County; the Elmore County Commission; Melvin Curlee and Elzie Mehearg, in their official capacity as Elmore County Commissioners; Richard Joiner; and Nationwide Insurance Company.
On the evening of May 17, 1984, Thomas Ragona was driving north on County Road 1448 in an automobile in which his mother, Barbara Ragona, was a passenger. Richard Joiner's automobile was traveling south. A head-on collision occurred when one of the two vehicles crossed the center line. Near the point of impact, there was a prominent hump in the road beginning where a private driveway intersected with the road and extending into the road approximately seven or eight feet. The general consensus of the testimony was that the hump was approximately 18 inches in height.
The complaint alleged that Commissioners Curlee and Mehearg, Elmore County, and the Elmore County Commission (the "County defendants") had negligently maintained County Road 1448 and that this negligence was a proximate cause of the plaintiffs' injuries. The complaint also alleged that defendant Joiner's automobile crossed over into the wrong lane and collided with the vehicle operated by Thomas Ragona.
The complaint further alleged that Barbara Ragona had a policy of insurance with defendant Nationwide Insurance Company under which it provided uninsured motorist coverage to her. The complaint alleged that Nationwide had wrongfully refused to pay the sum due her pursuant to the contract. The Elmore County defendants filed a motion to transfer the action to the Circuit Court of Elmore County, Alabama, on the grounds that all of the defendants other than Nationwide were residents of Elmore County and that the accident occurred in Elmore County, Alabama. The motion alleged that the presence of Nationwide should be disregarded in determining the proper venue of the action. Thereafter, before the court had entered a ruling on the motion to transfer, the Ragonas filed a motion to dismiss Nationwide pursuant to a pro tanto settlement agreement. The motion to dismiss Nationwide was granted.
The court subsequently denied the motion to transfer. After a jury trial against the Elmore County defendants and Richard Joiner, the jury returned a verdict in favor of Barbara Ragona in the amount of $100,000.00 compensatory damages and $50,000.00 punitive damages. The jury also rendered a verdict in favor of Thomas James Ragona but assessed no damages.
After deducting $13,250.00, the amount of the pro tanto settlement with Nationwide, the court entered judgment in favor of Barbara Ragona and against the defendants in the amount of $86,750.00 compensatory damages and $50,000 punitive damages. The trial court, in reducing the verdict by the amount of the pro tanto settlement, stated that the Ragonas' counsel agreed that the settlement amount should be deducted from the verdict. Motions for judgment notwithstanding the verdict or, in the alternative, for new trial were denied.
The County defendants first contend that the Ragonas' claim filed pursuant to Ala. Code 1975, § 11-12-5, was deficient because the claim was filed by the Ragonas' attorney, who did not have "personal knowledge" of the facts, as required by the statute, and because the damages sought in the claim were not sufficiently itemized to comply with the statute.
Section 6-5-20 provides that an action shall not be commenced against a county until the injured party has presented a claim to the county commission, the commission has disallowed or reduced the claim, and the claimant has refused to accept a reduction proposed by the commission. Section 11-12-5 further provides that "[n]o claim against the county shall be passed upon or allowed by the county commission unless it is itemized by the claimant or some person in his behalf having personal knowledge of the facts...." Ala. *723 Code 1975, § 11-12-5. At issue here is the proper interpretation of the terms "itemized" and "personal knowledge" for purposes of the statute.
Section 6-5-20 was enacted to provide county governing bodies with notice of claims against the county and an opportunity to audit and investigate the claims. Marshall County v. Uptain, 409 So.2d 423 (Ala.1981). Section 11-12-5 sets out specific requirements of claims filed pursuant to § 6-5-20. The claim filed in the instant case was filed and signed by the attorney for the Ragonas. The claim included a description of the accident and the accident scene, the basis for the claim that the county was liable, and a description of the injuries and the medical care that was required.
In light of the purpose of the notice statutes, we find that the claim filed by the Ragonas' attorney was sufficient to meet the requirements of § 11-12-5. Despite the argument of the County defendants, we do not believe that the term "personal knowledge" should be construed to limit the class of persons eligible to file claims to those involved in, or eyewitnesses to, the events giving rise to claims. Mrs. Ragona's attorney qualifies as "some person in [her] behalf having personal knowledge of the facts" as required by the statute. Perhaps no one is more familiar with the details of the facts regarding the Ragonas' claim than the attorney representing them.
The predecessor of § 11-12-5 read in pertinent part: "itemized and sworn to by the claimant, or some person in his behalf having personal knowledge of the facts," Code 1940, Tit. 12, § 115 (emphasis added). The words "and sworn to" were deleted by 1975 Ala.Acts, No. 566. This change indicates an intent by the legislature to reduce the stringency of the requirements for filing a claim against a county. Both the general spirit of this change and its specific terms support our holding that an attorney's knowledge of the facts meets the requirement of "personal knowledge"; that is, because the claim no longer has to be sworn to, the attorney can give a statement that meets the requirements of § 11-12-5. While it may be better practice for the client to make and sign the statement, the trial court did not err in holding that the claim was not insufficient on this ground.
Likewise, the itemization provision should not be narrowly construed as applying solely to a breakdown of damages in precise dollar amounts. Rather, the "items" should include a factual background, a description of the event or transaction giving rise to the claim, the alleged basis for the county's liability for damages resulting from the event or transaction, the nature of the damages, and the compensation demanded. See Merrill v. Blount County, 272 Ala. 585, 133 So.2d 212 (1961).
Although the notice statutes governing claims against municipalities are not identical to those governing claims against counties, their purposes are the same. Accordingly, our cases construing those statutes, while not directly applicable, are analogous to, and therefore persuasive in the construction of, the statutes applicable to counties, at least insofar as the two sets of statutes do not conflict. In Diemert v. City of Mobile, 474 So.2d 663 (Ala.1985), this Court held that, with regard to claims against municipalities, strict compliance with the notice statutes is no longer required. The Court stated that cities could not complain that relatively minor deficiencies in claims prevent them from acquiring knowledge of actions pending against them. 474 So.2d at 666. This is the more reasonable approach to the notice requirements, and there is no reasonable basis upon which to apply a different standard to claims against counties.
The County defendants next contend that the trial court committed reversible error in denying its motions for directed verdict and judgment notwithstanding the verdict. The County defendants argue that the case should not have been submitted to the jury because the county may not be held liable for (1) an excessive speed limit; (2) failure to erect warning signs; (3) failure to "super elevate" the road; (4) lack of visibility on the road; or (5) failure to remove the hump that allegedly caused the accident.
*724 It is undisputed that governmental entities, by virtue of their exclusive authority to maintain and control the roadways, are under a common law duty to keep them in repair and in a reasonably safe condition for their intended use. Jefferson County v. Sulzby, 468 So.2d 112 (Ala.1985); cf. Ala.Code 1975, § 23-1-80. This Court held that plaintiffs could sue counties and county commissions in Cook v. St. Clair County, 384 So.2d 1 (Ala.1980). That holding was based on Ala.Code 1975, § 11-1-2, which provides: "Every county is a body corporate, with power to sue or be sued in any court of record."
Since the county can be sued for its negligence, and is exclusively responsible for the maintenance and control of its roadways, its standard of care is to keep its roads in a reasonably safe condition for travel, and to remedy defects in the roadway upon receipt of notice. Sulzby, supra.
The evidence presented justified submitting to the jury the issue of whether the County had notice of a defective roadway condition and thus was under a duty to remedy the alleged defects. Although there was conflicting testimony as to whether the County had in fact breached its duty, there was evidence from which the jury could have reasonably inferred that the County had at least constructive notice of a defective condition of County Road 1448. This evidence included testimony from the county engineer that the hump in the road was noticeable to him. Two persons also testified that prior to the accident they had either called to complain about the road or had discussed the condition of the road with county commissioners.
We recognize that it is inappropriate to impose liability on counties for failure "to post traffic signs at every turn or intersection." Davis v. Coffee County Commission, 505 So.2d 329 (Ala.1987). However, in this case there was sufficient evidence from which a jury could have reasonably concluded that the County defendants had notice of the defective roadway condition and had breached their duty to keep the roadway in a reasonably safe condition for travel.
The County defendants next contend that the trial court erred in denying their motion to transfer this action to Elmore County. They claim that venue of this action was proper only in Elmore County. They also argue that an adverse ruling on venue is reviewable on appeal.
This Court has held that a trial court's ruling on a motion to transfer a cause to the proper venue must be reviewed by petition for writ of mandamus and cannot be raised in an appeal from a final judgment. Eager Beaver Buick, Inc. v. Burt, 503 So.2d 819 (Ala.1987); Rochester v. Hamrick Const. Co., 481 So.2d 881 (Ala.1985); Davis v. Marshall, 404 So.2d 642 (Ala. 1981).
The County defendants argue that Davis v. Marshall and the cases following it were improperly decided and should be overruled. They cite 2 C. Lyons, Alabama Rules of Civil Procedure Annotated, § 82.4 (2d ed. 1986):

"Davis, a case involving a venue defect relating to a claim of non-residence in the county in which the action was pending, relies upon [NYTCO] Services, Inc. v. Wilson, 351 So.2d 875 (Ala.1977) in which the change of venue was based on the forerunner of § 6-3-20 dealing with inability to receive a fair trial. Nytco correctly restates the rule of Mathis v. Board of School Commissioners of Mobile County, 289 Ala. 552, 268 So.2d 822 (1972), where a denial of a motion for change of venue is not reviewable on an appeal from a final judgment. An erroneous transfer of venue, a different concept, should be available on appeal from the final judgment."
Lyons cites Ingram v. Omelet Shoppe, Inc., 388 So.2d 190 (Ala.1980), and City Stores Co. v. Williams, 287 Ala. 385, 252 So.2d 45 (1971), as reviewing on appeal allegations of erroneous rulings on motions to transfer venue. The County defendants also cite Alabama Youth Services Bd. v. Ellis, 350 So.2d 405 (Ala.1977); Hardin v. Fullilove Excavating Co., 353 So.2d 779 (Ala.1977); and Marshall County v. Uptain, 409 So.2d 423 (Ala.1982), as reviewing *725 on appeal the trial courts' rulings on motions to transfer venue.
Upon a review of the cases, it does appear that Davis v. Marshall blurred the distinction between a change of venue because of alleged inability to receive a fair trial and a transfer of venue based on the place of residence or business of a defendant. The holding in Davis was followed in Rochester and Eager Beaver. Since Davis, it has become standard practice for parties challenging a transfer of venue or a refusal thereof to raise the issue by a mandamus petition. See, e.g., Ex parte Illinois Central Gulf R.R., 537 So.2d 899 (Ala.1988); Ex parte Progressive Cas. Ins. Co., 533 So.2d 230 (Ala.1988); Ex parte Finance America Corp., 507 So.2d 458 (Ala.1987); Ex parte Lani Kai, Ltd., 505 So.2d 312 (Ala.1987); Ex parte Hawkins, 497 So.2d 825 (Ala.1986); Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc., 496 So.2d 774 (Ala.1986); Ex parte Joiner, 486 So.2d 402 (Ala.1986); Ex parte Tidwell Industries, 480 So.2d 1201 (Ala.1985); Ex parte Owen, 437 So.2d 476 (Ala.1983); Ex parte Ford, 431 So.2d 1194 (Ala.1983).
In researching the parties' arguments as to whether Davis v. Marshall should be followed or overruled, we have considered Ala.Code 1975, § 6-8-101, which clearly allows a party to raise the question of transfer of venue on appeal from an adverse judgment on the merits: "A party may raise the defenses of ... (3) improper venue ... and, losing thereon, proceed to litigate on the merits; and, losing on the merits, the party may appeal and, on appeal, attack the judgment both on the merits and on such grounds (1) through (5) as he urged below." By virtue of this Code section, Davis v. Marshall and the cases following it, notably Rochester and Eager Beaver, are clearly due to be overruled, and parties are to be allowed to raise questions of improper venue on appeal.
We note in passing that this holding does not necessarily mean that mandamus will not lie prior to trial to correct an erroneous ruling on transfer of venue. It is appropriate with regard to either a change or a transfer[1] of venue to have the forum established before a trial on the merits is held. In fact, a change of venue is usually discretionary with the trial court, but a transfer is non-discretionary, depending only upon whether the defendant is a resident of, or is doing business in, the forum county (or other relevant matters, such as the site of an accident). Thus, since a writ of mandamus will be granted only where the petitioner has a clear right to the relief sought, mandamus is a remedy even more appropriate for a non-discretionary erroneous transfer than for a change of venue that amounts to an abuse of discretion. Furthermore, the requirement for mandamus that the petitioner have no adequate remedy by appeal is met because such a writ is the only means by which to avoid the unnecessary expense of a pointless trial in the wrong forum.
Although we hold that the question of venue is presented on this appeal, we do not find any error in the trial court's denial of the motion for change of venue. The question of proper venue is to be determined as of the time the action is filed. Rule 82(b)(1)(A), Ala.R.Civ.P.; Ex parte Smith, 423 So.2d 844 (Ala.1982); Ex parte Wilson, 408 So.2d 94 (Ala.1981). At the time this action was filed, venue was proper in Montgomery County due to the presence of Nationwide as a defendant.
The fact that the claim against Nationwide was settled prior to trial presented a question for the trial court's discretion as to whether the settlement "was an attempt to defeat the right to transfer." Rule 82(d)(2)(A), Ala.R.Civ.P.; Ex parte Terrell, 503 So.2d 847 (Ala.1987); Ex parte Maness, 386 So.2d 429 (Ala.1980). Nationwide was a material defendant because of its refusal to pay uninsured motorist benefits; its interest *726 was aligned with that of the other defendants; and the settlement was substantial. Therefore, the trial court did not abuse its discretion in denying the motion to transfer.
We note that the case presents no question of forum non conveniens. Ala.Code 1975, § 6-3-21.1 (effective June 11, 1987).
The County defendants next contend that the trial court erred in refusing to permit proof that warning signs are not customarily placed on dirt roads in other counties. The County defendants sought to counter the Ragonas' claim that due care required placement of a sign warning of the hump in County Road 1448 with evidence that other counties do not normally place warning signs on dirt roads.
During questioning of Steve Martin, the Elmore County engineer, the following exchanges occurred:
"Q. (by Mr. Dunn, defense counsel): Do any of the rural unimproved dirt roads in Elmore County have signs?
"A. They have stop signs. Other than that, they do not.
"Q. When you were [engineer] in Bullock County, did they have signs?
"MR. SEGALL: Object to Bullock County, your honor.
"THE COURT: I sustain it.
"MR. DUNN, continuing.
"Q. Other rural counties surrounding Elmore County?
"MR. SEGALL: Object to
"THE COURT: I sustain it.
". . . .
"MR. DUNN, continuing.
"Q. Do you know of any county that does?
"A. I do not know of any county that does
"MR. SEGALL: I object to whether he knows anything about that.
"THE COURT: I sustain it.
"MR. SEGALL: If he knows it.
"THE COURT: Let's stay with Elmore County."
In order for error to warrant reversal, it must be prejudicial. Schneider v. Mobile County, 284 Ala. 304, 224 So.2d 657 (1969). Even if the failure to admit evidence of the custom of counties with regard to placement of signs on dirt roads was error, it did not prejudice substantially the rights of the County defendants. The law in Alabama is that customary practices do not furnish a conclusive test of negligence. Dunn v. Wixom Brothers, 493 So. 2d 1356 (Ala.1986); Klein v. Mr. Transmission, Inc., 294 Ala. 437, 318 So.2d 676 (1975). "What should have been done is fixed by a standard of reasonable prudence, whether it is usually complied with or not." Klein, supra; Roberts v. Kurn, 231 Ala. 384, 165 So. 77 (1935). In any event, the prejudicial effect of any error resulting from the refusal to admit the evidence was diminished by the fact that the traffic engineer was allowed to answer before the objection was made and sustained. No corrective instruction was requested or given. The trial court did not err to reversal in refusing to allow further testimony concerning the custom of counties with regard to the placement of warning signs on dirt roads.
The County defendants next make two arguments regarding the amount of damages awarded: (1) that the court erred in allowing the recovery of punitive damages, and (2) that the court erred in refusing to reduce the judgment to $100,000.
The latter argument is premised on § 11-93-2. That section reads:
"The recovery of damages under any judgment against a governmental entity shall be limited to $100,000.00 for bodily injury or death for one person in any single occurrence. Recovery of damages under any judgment or judgments against a governmental entity shall be limited to $300,000.00 in the aggregate where more than two persons have claims or judgments on account of bodily injury or death arising out of any single occurrence. Recovery of damages under any judgment against a governmental entity shall be limited to $100,000.00 for damage or loss of property arising out of any single occurrence. No governmental entity shall settle or compromise any claim for bodily injury, death or property *727 damage in excess of the amounts hereinabove set forth."
This Court held in Nowlin v. Druid City Hospital Bd., 475 So.2d 469 (Ala.1985), that this Code section affects only the recovery of damages, not the amount for which judgment can be rendered. The issues presented in the subsequent appeal of Nowlin, regarding the obligation of the Board's insurer to pay any amount in excess of the statutory limits, are not presented in this case. See St. Paul Fire & Marine Ins. Co. v. Nowlin, 542 So.2d 1190 (Ala.1988).
The jury returned its verdict in the amount of $100,000 compensatory and $50,000 punitive damages for Barbara Ragona and $0.00 (zero) damages for Thomas Ragona. When asked to explain the failure to award any damages for Thomas, a juror responded: "[W]e felt that he was Mrs. Ragona's son so she should be responsible for his medical bills. That's what the jury decided."
Under § 11-93-2, as an illustration, if the jury had awarded damages to Thomas Ragona for his personal injuries, and awarded to Barbara Ragona an additional amount in property damages over and above the $100,000 award for her personal injuries, Ms. Ragona could collect from the County defendants both the $100,000 personal injury award and the property damage award not to exceed an additional $100,000. Her son could also recover the award for his personal injuries not to exceed $100,000. However, the jury's award did not include any money damages for the son or any property damage for Ms. Ragona. As rendered, the verdict and judgment will support a recovery by Ms. Ragona against the County defendants only in the amount of $100,000.
The County defendants also argue that the award of punitive damages against them was improper. The cases they have cited in support of this proposition are not persuasive, however, and we are not aware of any reason why such damages could not be awarded. Cf. Ala.Code 1975, § 6-11-26, effective June 11, 1987.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
MADDOX, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.
JONES, J., concurs specially.
JONES, Justice (concurring specially).
I write specially to speak to two separate aspects of the Court's opinion: 1) the opinion's reaffirmance of Nowlin v. Druid City Hospital Board, 475 So.2d 469 (Ala.1985) ("Nowlin I"); and 2) the limitation of § 11-93-2 on the judgment creditor's right to recovery for a single injury against a governmental entity.
This case presents the identical facts used as a hypothetical example in my dissent from the denial of rehearing in St. Paul Fire & Marine Ins. Co. v. Nowlin, 542 So.2d 1190 (Ala.1988) (Nowlin II) (rehearing denied, Jan. 13, 1989), to illustrate the proposition that § 11-83-2 does not effect a reduction of the judgment to $100,000the statutory cap on the judgment creditor's right of recovery. Notwithstanding Nowlin II's implicit holding to the contrary, a unanimous Court now holds that the $136,750 judgment against Elmore County and the other joint tort-feasors is not reduced to $100,000, only that the judgment creditor is limited in her recovery against the County to the statutory cap of $100,000, and that the unprotected joint tort-feasor is separately and severally liable for the full $136,750 judgment. Query: If the Court in Nowlin II had accepted the "nonreduction of judgment" premise in its analysis of the issue, given the insurer's promise to pay the insured's "obligation as determined by judgment," would it still have concluded that the insurer's obligation was reduced to $100,000? It is interesting to note that the author of the main opinion in the instant case did not vote in Nowlin II on rehearing. At least, he spared himself of participation in the inconsistency of Nowlin II's "reduction of the judgment" holding and *728 the instant "nonreduction of the judgment" holding.
Finally, I agree that § 11-93-2 limits the right of Mrs. Ragona, as the judgment creditor, so that she can recover no more than $100,000 from Elmore County. There is only one money judgment in this case. That judgment is for $136,750 in favor of Mrs. Ragona ($86,750 compensatory damages and $50,000 punitive damages), against all the joint tort-feasors. The County is entitled to the § 11-93-2 exemption from execution for all sums in excess of $100,000. Unprotected joint tort-feasors are not entitled to the statutory protection against the judgment creditor's right to recover in excess of $100,000. While these indisputable principles verify the present reaffirmance of Nowlin I's narrow holding, that the statutory $100,000 cap on the judgment creditor's right of recovery against the governmental entity does not affect the judgment (the contrary holding in Nowlin II notwithstanding), these same principles, properly applied, bar Mrs. Ragona's right of recovery against the County for all sums in excess of $100,000.
The reasons for this conclusion seem almost too trite to bear recitation. The suit was prosecuted by two separate plaintiffs Mrs. Ragona and her minor son. Mrs. Ragona's individual suit included a derivative claim for medical expenses resulting from her son's injuries. The son's suit claimed damages for his personal injuries. The jury returned two separate verdicts one in favor of the son for zero damages, and one for the mother for $150,000. Judgments were entered accordingly, with a remittitur of $13,250, the amount of the pro tanto settlement, from Mrs. Ragona's compensatory damages award, as indicated in the majority opinion. How many money judgments were entered? One and only onefor $136,750 in favor of Mrs. Ragona.
Understandably, Mrs. Ragona urges the Court to use the trial court's conversation with the jury foreman to create the "two injury" recovery. If we give any credence to the juror's explanation (which legally we can not do), the two jury verdicts are rendered illegal as being hopelessly inconsistent. The mother's derivative suit for medical expenses is defeated once the jury finds that the son was not injured. Absent a finding that the son was injured (and the legal effect of the zero verdict is that he was not), the inclusion of any of the son's medical expenses in the mother's verdict is illegal. Furthermore, no part of the $50,000 punitive damages award is attributable to the "second injury." This is true for two reasons: First, the mother's derivative suit arising out of the son's alleged injury will not support an award of punitive damages; and, second, punitive damages will not lie absent a finding of at least nominal actual damages.
But, the Court's opinion indicates that is not the proper approach. The jury's explanation for its zero verdict for the son became no part of the mother's verdict and, consequently, no part of the judgment entered thereon. Therefore, the mother is entitled to proceed against the County to recover the first $100,000 of her $136,750 judgment. She is further entitled to proceed against unprotected individual joint tort-feasors for any part, or all, of her $136,750 judgment. Of course, she can have but one recovery of the full amount of the judgment.
NOTES
[1] Although "change" and "transfer" have been used interchangeably in recent years, for purposes of this discussion we use "change of venue" with respect to its traditional use in regard to a change due to inability to receive a fair trial, and "transfer of venue" with respect to the question of residence of the defendant(s).